In the Interest of L.A.M.R.,
M.R.R., and D.J.M.

M.D.R., Appellant

v.

Greene County Juvenile
Office, Respondent.

Nos. 26783, 26785.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 15, 2005.

Kevin A. Easley, Hazelrigg, Roberts & Easley, P.C., Springfield, for appellant.

Bill Prince, Springfield, for respondent.

JOHN E. PARRISH, Judge.

M.D.R., mother of son, D.J.M., born April 8, 2001, and two daughters, L.A.M.R., born June 19, 1997, and M.R.R. born June 17, 1999, appeals the termination of her parental rights. No. 26783 is the appeal of the judgment terminating her parental rights to L.A.M.R. and M.R.R. No. 26785 is her appeal of the judgment terminating parental rights to D.J.M. The appeals were consolidated by this court. Both judgments are affirmed.

"Juvenile proceedings and appellate review of such, partake the nature of civil proceedings and the scope of review is as in court-tried cases." *C.R.K. v. H.J.K,* 672 S.W.2d 696, 698 (Mo.App. 1984). The trial court order terminating parental rights is the judgment from which the appeal is taken. § 211.261, RSMo 2000; Rule 120.01. The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In Interest of S.J.G.,* 871 S.W.2d 638, 640 (Mo.App.1994), *citing In Interest of L.W.,* 830 S.W.2d 885, 886 (Mo.App. 1992). This court views the facts and reasonable inferences from those facts in the light most favorable to the judgment. *In Interest of M.L.K.,* 804 S.W.2d 398, 400 (Mo.App.1991). Where multiple statutory bases for termination of parental rights are found, all that must be found in order to affirm the judgment is that one of the statutory grounds was proven and that termination is in the best interests of the children. *In Interest of S.J.G., supra,* at 641.

*M.J. v. Greene County Juvenile Office,* 66 S.W.3d 745, 747 (Mo.App.2001).

On the morning of August 25, 2002, Springfield, Missouri, police received a report that two children were unattended at the swimming pool of an apartment complex. The children were L.A.M.R. and M.R.R. At that time, L.A.M.R. was five years old. M.R.R. was three. A police officer responded and found the two children at the pool without supervision. M.R.R. was unclothed. Both children had bruising on their bodies. Missouri Division of Family Services (DFS) was contacted. A DFS worker joined the officer at the apartment complex.

M.D.R. resided at the apartment complex with the three children and with R.M., father of D.J.M.[1] The police officer contacted her. She informed the officer that she had been asleep in her apartment and was not aware that the children were at the swimming pool. M.D.R. said she was up late the night before with D.J.M. who was ill with ear infection, fever, and tonsil-

---

1. R.M.'s parental rights were also terminated in No. 26785. He does not appeal.

litis. She stated she had taken D.J.M. to a walk-in clinic and obtained a prescription for medication but had not filled the prescription because she did not have gas money to get to the pharmacy. However, R.M. reported that M.D.R. left the apartment that evening on two occasions to obtain beer and cigarettes.

M.D.R. was asked about the bruises on the children. Her explanation to the DFS worker was that she and R.M. "did beat the children with their hands and a belt." M.D.R. was asked when was the last time she spanked or used a belt on a child. She could not tell the DFS worker because she said the children acted up daily.

The DFS worker talked to L.A.M.R. She told the worker that M.D.R. and R.M. "both beat her and her sister, M.R.R., with a belt and their hands." L.A.M.R. was asked when was the last time she was hit. L.A.M.R. could not remember; she told the DFS worker "she [got] it all the time."

M.D.R. was arrested on charges of child endangerment and child abuse. The children were taken into custody by DFS and subsequently placed in DFS care by the juvenile court. Petitions to terminate M.D.R.'s parental rights were filed November 6, 2003. The petition to terminate parental rights to D.J.M. and the petition to terminate parental rights to L.A.M.R. and M.R.R. alleged that the children were in the care of the Missouri Department of Social Services, Children's Division, (formerly DFS) due to parental neglect; that the children were with that agency "pursuant to an order in Greene County Juvenile Court."

The petitions alleged that the children had been judicially determined as "abused and/or neglected" and that the children had been under the jurisdiction of the juvenile court for a period of one year, and the conditions that led to the assumption of jurisdiction still persisted or conditions of potentially harmful nature continued to exist. The petitions alleged that there was little likelihood the conditions would be remedied at an early enough date so that the children could be returned to a parent in the near future, and that continuation of the parent and child relationship greatly diminished the children's prospects of early integration into a stable and permanent home.

The trial court found, with respect to each child, that the allegations in the petitions were true. It concluded, with respect to each child, that it was in the child's best interests to terminate M.D.R.'s parental rights.

■■■ M.D.R. raises one point on appeal. She does not challenge the findings of the trial court that there are statutory grounds for terminating her parental rights.[2] The point on appeal contends the trial court erred in finding "(1) that there were no emotional ties and a bond between the minor children and [M.D.R.], (2) that [M.D.R.] failed to provide support or like kind support to the child, (3) that there are no further services that could be offered to help rectify the situation and return the minor children back to the home, (4) that [M.D.R.] has shown a disinterest in and lack of commitment to the minor children and (5) that [M.D.R.] has not maintained visitation or other contact with the children."[3] A trial court is required to make

---

**2.** The trial court found that each child had been adjudicated neglected and abused and that each child had been subject to the trial court's jurisdiction for in excess of one year, but conditions leading to the assumption of jurisdiction continued to exist, including failure of M.D.R. to provide continuing and consistent parental relationships along with safe, stable and secure home environments. *See* § 211.447.4(2) and (3), RSMo 2000.

**3.** M.D.R.'s point on appeal urges that the evidence was insufficient for the trial court to

findings on those topics when considering whether to terminate the parent-child relationship pursuant to the statutory grounds the trial court relied on in this case for terminating M.D.R.'s parental rights. *See* § 211.447.6.[4]

■■■ As this court perceives M.D.R.'s point on appeal, what she challenges is the trial court's determination that termination of her parental rights was in the best interests of the children. That issue, therefore, is the only issue for appellate review. "An appellate court reviews only issues raised in the points relied on in an appellant's brief." *State v. Rogers,* 973 S.W.2d 495, 498 (Mo.App.1998). *See also In re A.K.F.,* 164 S.W.3d 149, 152 (Mo. App.2005).

The determination of what is in a child's best interests is an ultimate conclusion for the trial court based on the totality of the circumstances. *[In the Interest of] M.J.,* 66 S.W.3d [745] at 749 [ (Mo.App.2001) ]. It is the trial court's duty to weigh the evidence presented relating to best interests and we will not reweigh that evidence. *Id.* We review the trial court's determination that termination was in the best interests of a child pursuant to an abuse of discretion standard. *[In the Interest of] K.C.M.,* 85 S.W.3d [682] at 689 [ (Mo.App.2002) ]. *In re K.J.K.,* 108 S.W.3d 62, 68 (Mo.App. 2003).

Section 211.447.6 states that when a trial court is considering whether to terminate the parent-child relationship on the grounds on which the trial court acted in the cases consolidated for purposes of this appeal, "the court shall evaluate and make findings on [factors set forth in the stat-

ute], when appropriate and applicable to the case[.]" Those factors include:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child.

The trial court's findings included that the evidence indicated the minor children did not demonstrate emotional ties or attachments to M.D.R. The trial court found, however, that M.D.R. generally maintained contact with the children. The trial court found no parent provided verification of payment of financial support, but that M.D.R. provided some items of in-kind support. It found that there were no services that could be offered which would enable placement of the children with M.D.R. within an ascertainable time. It further found that through her unwillingness to assimilate change, M.D.R. had shown a disinterest in and lack of commitment to the minor children.

M.D.R. relies on evidence presented by Ann Beatty as support for her contention that there were emotional ties between her and the children. Dr. Beatty is a psychol-

---

have made findings "clearly, cogently, and convincingly." Findings regarding a child's best interests are reviewed on an abuse of discretion standard, not a clear, cogent and convincing standard. *In re A.T.,* 88 S.W.3d 903, 908 (Mo.App.2002).

4. References to statutes are to RSMo 2000.

ogist. M.D.R. and the children were referred to her for counseling. Dr. Beatty testified that L.A.M.R. and M.R.R. had emotional ties to M.D.R., but that D.J.M. had very little attachment to M.D.R. Dr. Beatty observed, however, that she would not want the children to live with M.D.R.; that she would be very concerned about the home environment M.D.R. would provide.

Testimony by Dr. Mark Bradford, a clinical psychologist, supports a finding that the emotional ties the children had with M.D.R. were unhealthy and detrimental to the children. He observed that M.D.R.'s emotional problems override her common sense or judgment to parent. He concluded that M.D.R. became overwhelmed with her own issues so that she had poor judgment in terms of caring for children. He stated that the children do not have the time that would be required for M.D.R. to mature and become a capable parent.

Brooke Adams, a case worker, testified regarding the interaction among M.D.R. and the children at visits. She stated that the children did not respond well to visits with M.D.R.; that visits would be followed by nightmares, bedwetting and "tantruming". She said these types of things occurred from anything associated with visits by M.D.R.

The evidence demonstrated a lack of healthy emotional attachments between M.D.R. and the children. It supported the determination that termination of parental rights was in the best interests of the children. *See In re A.T.*, 88 S.W.3d 903, 908 (Mo.App.2002).

M.D.R.'s point on appeal misstates the trial court's finding regarding providing support for the children. The trial court found M.D.R. provided some in-kind support. M.D.R. argues that the evidence did not reveal that there were no further services that could be offered to rectify the circumstances that led to the trial court taking custody of her children. The evidence revealed that M.D.R. was referred to two psychologists, provided individual and family therapy, parenting education, and therapeutic visitation. These services did not alleviate the circumstances that led to the court taking custody of the children.

The children had been in DFS custody for approximately 20 months at the time of the termination of parental rights hearing. There was testimony by a case worker that neither M.D.R. nor anyone else had requested additional services. The finding that no additional services could be offered that would enable return of the children to M.D.R. within an ascertainable period of time was supported by substantial evidence.

The trial court found a disinterest by M.D.R. in the children and lack of commitment to them. There was evidence that M.D.R. was unwilling to make changes that would facilitate a return of the children; that a year and a half after the children had been removed from M.D.R.'s custody, M.D.R. still lacked stable housing and steady employment. M.D.R. admitted at the hearing that she was not in a position to parent the children. M.D.R.'s failure to make adequate progress to provide a home and financial stability demonstrated a disinterest in the children and lack of commitment to them.

M.D.R. attempted to visit the children "every couple of weeks." The visits had negative effects on the children. M.D.R. would sometimes leave before the time allotted for the visits. Although this may not amount to evidence of failure to maintain visitation or contact, it demonstrates a lack of commitment by M.D.R. to secure the return of her children.

A determination of what is in children's best interests is an ultimate conclusion to

be made on the basis of the totality of the circumstances. *In re K.J.K., supra.* That conclusion is not limited to an evaluation of the factors on which the trial court was required to make specific findings. There was sufficient evidence for the trial court to conclude it was in the children's best interests to terminate M.D.R.'s parental rights. The trial court did not abuse its discretion in so finding. M.D.R.'s point on appeal is denied. The judgments are affirmed.

PREWITT, P.J., and RAHMEYER, J., concur.