**In the Interest of L.M. and S.C.M.**
**C.K.M., Appellant,**

v.

**Greene County Juvenile**
**Office, Respondent.**

No. 27890.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 29, 2007.

179

Kevin A. Easley, Hazelrigg, Roberts & Easley, P.C., Springfield, MO, for Appellant.

Bill Prince and Jason J. Lessmeier, Springfield, MO, for Respondent.

GARY W. LYNCH, Judge.

C.K.M. ("Mother") appeals the judgments terminating her parental rights in her two minor daughters, S.C.M and L.M. (collectively, "the Children") upon petitions filed by the Greene County Juvenile Office ("Juvenile Office").[1] In her sole point on appeal, Mother claims the Trial Court erred in finding that grounds exist for termination and that the terminations

---

1. The parental rights of the Children's alleged biological fathers and any unknown fathers were also terminated by the Trial Court's judgment. As these fathers have not appealed, this aspect of the judgment is left undisturbed by our opinion.

were in the Children's best interest. We affirm.

### Factual and Procedural Background

■ "In reviewing a trial court's judgment terminating parental rights, we consider the facts and reasonable inferences therefrom in the light most favorable to the judgment." *In the Interest of A.M.F. and D.R.F,* 140 S.W.3d 201, 203 (Mo.App. 2004). Viewed in this light, the following information is pertinent to this appeal.

At around 6:45 p.m. on September 28, 2002, Officer Mark Gann responded to a call to check on the well-being of the Children at a Wal–Mart store in Springfield, Missouri. While there, he made contact with Mother and the Children. He noticed that Mother appeared disoriented, had slurred speech, and did not comprehend what he said to her. S.C.M informed him that she was hungry and had not eaten anything since the previous night. Mother told him that she had taken several different types of drugs, some prescription, and that on occasion she used recreational drugs. She maintained that while the Children had seen her take pills and drink, they had never seen her shoot up dope because they were already asleep. Office Gann arrested Mother on charges of child endangerment, contacted the Division of Family Services ("Division"), and took protective custody of the Children.

The Trial Court ordered temporary legal custody of the Children placed with the Division until a jurisdictional hearing could be held on August 11, 2003. Upon the jurisdictional hearing, the Trial Court found the Children to be within its jurisdiction, pursuant to § 211.031.1(1),[2] and that the Children were in need of the care, protection, and services of the Court.

Temporary custody of the Children was continued with the Division.

The Division's original case goal was reunification, and pursuant to that goal the Division prepared a treatment plan for Mother outlining the minimal expectations that the Division required of Mother in order to indicate her desire to regain custody of the Children. Mother failed to adequately comply with this treatment plan, and on August 5, 2005, the Juvenile Office brought petitions to terminate her parental rights. The Trial Court held a consolidated hearing on the petitions, and on June 15, 2006 it entered judgments terminating Mother's parental rights in the Children. This appeal of both judgments followed. Additional facts will be elicited in the analysis of Mother's point relied on.

### Standard of Review

■ In deciding whether to terminate parental rights, a trial court must employ a two-step analysis. *In the Interest of S.J.H. and C.A.H.,* 124 S.W.3d 63, 66 (Mo. App.2004). The first step involves determining whether a statutory ground for termination has been proven by "clear, cogent, and convincing evidence." *Id.;* § 211.447.5. "Clear, cogent and convincing evidence is that which 'instantly tilts the scales' in favor of termination when weighed against the evidence presented by the parent whose rights were terminated." *A.M.F. and D.R.F,* 140 S.W.3d at 205, *quoting In the Interest of C.L.W.,* 115 S.W.3d 354, 355–56 (Mo.App.2003). We will reverse a trial court's determination under this step only if it is unsupported by substantial evidence, is against the weight of the evidence, or it erroneously declares

**2.** All statutory references are to Missouri Revised Statutes (2000) unless otherwise indicated.

or applies the law. *S.J.H. and C.A.H.*, 124 S.W.3d at 66.

■ If the first step is satisfied, the trial court moves to the second step and determines whether the termination of parental rights is in the best interest of the child. *Id.*; § 211.447.5. "The best interests prong must be proven by a preponderance of the evidence, and an appellate court reviews that ruling per an abuse of discretion standard." *In the Interest of A.Y.M.*, 154 S.W.3d 412, 414 (Mo.App. 2004), *citing (In re P.L.O.*, 131 S.W.3d 782, 788–89[7, 8] (Mo. banc 2004)).

■ The termination of parental rights is an awesome power that involves fundamental liberty interests associated with family and child rearing. *A.M.F. and D.R.F.*, 140 S.W.3d at 205. For that reason, we review the record very closely to ensure this awesome power was properly exercised. *Id.*

### Analysis

#### 1. Ground for Termination

■ In making its findings, the Trial Court found clear, cogent, and convincing evidence that the termination was warranted on the grounds that: (1) the Children were abused and/or neglected under § 211.447.4(2) ("abuse/neglect"); and (2) the Children had been under the jurisdiction of the juvenile court for a period in excess of one year, and the conditions leading to the assumption of jurisdiction still persist under § 211.447.4(3) ("failure to rectify"). When a Trial Court finds multiple statutory bases for termination of parental rights, all that must be found in order to affirm the judgment is that one of the statutory grounds was proven. *In the Interest of L.A.M.R.*, 179 S.W.3d 418, 419 (Mo.App.2005). Because we find substantial evidence from which the Trial Court could support the statutory ground for termination for failure to rectify under § 211.447.4(3), we need not address any claim of error for the abuse/neglect ground under § 211.447.4(2).

Section 211.447.4(3) allows termination of parental rights when:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the Division and extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the Division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing necessary care, custody and control over the child and which cannot be treated so as to enable the

parent to consistently provide such care, custody and control[.]

Therefore, in order to find the existence of the *failure-to-rectify ground for termination*, the Trial Court must find:

(1) that the child has been under the jurisdiction of the juvenile court for a period of one year; (2) that the conditions which led to assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist; and, (3) that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

*In the Interest of B.J.K. and J.R.K.*, 197 S.W.3d 237, 243 (Mo.App.2006). "Thus, as to the second and third required findings, there are two permissible alternative findings." *Id.*

■■■■ In addition, in order to terminate parental rights for *failure-to-rectify* under this subdivision, the trial court is required to consider and make findings with respect to each of the four conditions set forth in § 211.447.4(3)(a)-(d). *In the Interest of A.S.O.*, 75 S.W.3d 905, 912 (Mo. App.2002), *citing In the Interest of S.C.*, 914 S.W.2d 408, 411 (Mo.App.1996). "'These factors are not separate grounds for termination in and of themselves but rather categories of evidence to be considered together with all other relevant evidence. Although the court is required to consider and make findings as to all four conditions or acts, the proof of one is sufficient for termination.'" *Id.* at 912–13, *quoting In re N.M.J.*, 24 S.W.3d 771, 778 (Mo.App.2000) (citations omitted).

Here, in terminating Mother's parental rights, the Trial Court found: (1) the Children have "been under the jurisdiction of the juvenile court for a period ... in excess of one year"; (2) "the conditions which led to the assumption of jurisdiction still persist"; and (3) "there is little or no likelihood that those conditions will be remedied at an early date so that the child can be returned to a parent in the near future" *and* "continuation of the parent and child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home." (Emphasis added.) Thus, under the second required finding, the Trial Court found the first alternative existed, and under the third required finding the Trial Court found both alternatives existed.

Mother does not challenge the Trial Court's determination as to the first or third requirements. Mother challenges the evidentiary basis for the Trial Court's determination of the existence of the second requirement—that the conditions leading to the assumption of jurisdiction remain—and its supportive findings as to Mother's mental condition, as required by § 211.447.4(3)(c), and Mother's chemical dependency, as required by § 211.447.4(3)(d). Mother claims there was insufficient evidence for the trial court to clearly, cogently, and convincingly make this determination and these findings. We disagree.

The Trial Court originally took jurisdiction over the Children because of Mother's unmanaged mental condition, chemical dependency, and her inability to provide the Children with appropriate care, custody, and control. The Trial Court's finding that these conditions still persist is supported by substantial evidence.

### (A) Mental Condition

Mother has a long history of mental problems. When she was younger, she was raped by an acquaintance and left for dead in a shallow grave. She did not

receive adequate therapy for this trauma. She has suffered from bipolar disorder since she was a teenager. There was no evidence presented other than this was a permanent condition. The events at Wal–Mart which led to the assumption of jurisdiction over the Children were the result of Mother's failure to adequately manage her mental illnesses and her medications therefor, her chemical dependencies on illegal substances, or a combination of both. After the Trial Court originally took jurisdiction of the Children, the following events took place.

In December 2002, Mother was admitted to the adult crisis stabilization unit of Burrell Behavioral Health. The adult crisis stabilization unit is not a locked facility and operates much like a halfway house allowing its patients to receive medication and individual and group counseling. At the time Mother was admitted, she was taking several prescription drugs, including Zyprexa, Depakote, Synthroid, Vioxx, Xanax, Antabuse, Celexa, Razadone, Flagyl, Flexeril, and an Albuterol inhaler.

During this stay, Mother was evaluated by Dr. Nicodermus Garcia ("Garcia") and diagnosed as suffering from bipolar affective disorder of the mixed type, post-traumatic stress disorder by history, panic disorder by history, chronic polysubstance abuse in partial remission, and personality disorder with borderline traits, not otherwise specified. Mother disclosed to Dr. Garcia that she was currently experiencing racing thoughts, talking fast, and doing impulsive things, such as spending her money like water. She also disclosed experiencing unexplained crying spells and tactile hallucinations. Mother admitted to Dr. Garcia of having a history of chronic polysubstance abuse. Dr. Garcia noted:

> She has been using intravenous drugs in the past and was injecting cocaine and/or methamphetamine. Her last admitted use of drugs reportedly was in

the middle of August 2002. Her last use of alcohol reportedly was on Halloween 2002. Patient has been through several drug rehab programs in the past.

To deal with these issues, Garcia recommended counseling, medication, and long-term substance abuse programs. He also made changes to Mother's prescription drugs because of her history of substance abuse. One of those changes was taking Mother off Xanax, which is addictive and has a strong abuse potential, and starting her on Vistarile, in lieu of Xanax, to treat her anxiety.

Dr. Garcia also indicated that Mother's Global Assessment of Functioning Scale at the time of admission received a rating of 35–40. He indicated that this scale reflects the physician's perception of the level of functioning that a patient would be able to do "in terms of, like, is he able to go out and work, or is he able to, you know—Or is he so sick that, you know, he would pose a danger to himself or society." Dr Garcia indicated that Mother's score of "35 to 40 is, you know, patient is sick, but not being, you know, a big danger to society."

Between September 2003 and March 2004, testimony established that Mother, other than her positive test for THC in February, was cooperating with her psychologist and the recommendations made by the psychologist. In May 2004, Mother was once again admitted to the adult crisis stabilization unit of Burrell Behavioral Health. Mother's urine drug screen taken upon her admission was positive for benzodiazepine, which indicated the presence of Xanax in her system. Dr. Garcia saw little change in Mother's condition on this admission as compared to her admission in 2002.

Also from May 2004 through the date of the hearing, Mother failed to verify with the Division as required by her treatment

plan that she was seeing a psychologist, obtaining counseling, or taking medication for her mental conditions. During this time period, the identity of the mental-health-care providers, if any, that Mother was seeing and of the pharmacies, if any, where Mother was obtaining her pre-scribed medications were uniquely within Mother's knowledge. Yet, Mother chose not to offer the Division or the Trial Court any information or evidence that she was in fact properly managing her mental con-ditions by appropriate therapy and medi-cation during this almost two-year time period.

As late as September 2005, evidence was presented that Mother was still exhibiting symptoms associated with her bipolar dis-order. Garcia testified that bipolar disor-der, if not properly managed such that it is acting up or active, can impair a person's ability to take care of themselves and of children.

This chronicle of events demonstrates that from December 2002 until sometime between February to May 2004, Mother was engaged in the necessary psychologi-cal counseling and medication to help her manage her mental conditions. However, she did not continue on this path of recov-ery, and from May 2004 until the date of the hearing there is no evidence that Mother did anything to appropriately man-age her mental conditions. Instead, there is evidence that in September 2005 Mother was still exhibiting active symptoms of her bipolar disorder, which an expert testified can impair her ability to care for children. Therefore, there was substantial evidence to support the Trial Court's finding that Mother's unmanaged mental conditions still existed in the same state as it did when the Court originally assumed juris-diction over the Children and that it con-tinues to render Mother unable to know-ingly provide the Children the necessary care, custody, and control.

### (B) Chemical Dependency

Mother has experienced extensive, long-term involvement with chemical dependen-cy. She told Officer Gann at the Wal–Mart in October 2002, that on occasion she partook in recreational drug use and told the Division that she had used Oxycontin, methamphetamines, and heroin in the past. In admitting her heroin use, Mother volun-teered to the Division's caseworker that it was "real easy to find around here." This drug use was one reason the Trial Court originally assumed jurisdiction over the Children. From that time until the date of the hearing, the following events took place.

In December 2002, upon admittance to the adult crisis stabilization unit of Burrell Behavioral Health, Mother related her ex-tensive substance abuse history and drug treatment history to Dr. Garcia as noted above. Upon admission, Mother took a urine drug screen test which showed no sign of illegal drugs.

In 2003, Mother had three drug screens: two were negative for illegal drugs; and one in June was positive for THC. She also admitted to using valium during one of these drug tests. Additionally, after the positive test she received inpatient treat-ment for her addiction at the Cox Center for Addictions and at Southeast Missouri Community Center.

In February of 2004, Mother again test-ed positive for THC. Upon admittance three months later to the adult crisis stabi-lization unit of Burrell Behavioral Health for treatment of her mental conditions, Mother took a urine drug screen test which tested positive for Xanax, a drug which Dr. Garcia had discontinued in De-cember 2002. In July, Mother again test-ed positive for THC and shortly after that positive test she refused another drug screen, stating she would not pass. There

is no evidence that Mother attended substance abuse treatment during this year.

In 2005, Mother once again tested positive for THC. Mother admitted that she had smoked marijuana within the previous three weeks and that prior to that time period she smoked three to five "joints" a day. She was referred to and admitted for inpatient treatment at the Carol Jones Recovery Center for Women. She did not complete this inpatient program. Instead, she left the program after less than two weeks, claiming that it wasn't a good program. There is no evidence of Mother attending any other substance abuse treatment program during this year.

In 2006, Mother refused drug testing, stating that she would test positive for THC and that she was associating with persons who either used drugs or tolerated her use of drugs. The Division tried to get Mother back into the Carol Jones Recovery Center for Women, but Mother falsely claimed to the Division that the center had told her she could not come back. Mother did complete a two-day drug education class as ordered through the criminal court in connection with a charge of possession of drug paraphernalia.

These events show a pattern of Mother taking drugs, attempting some drug therapy and treatment, and then relapsing into her drug habit. It culminated with Mother finally refusing to engage in treatment by deceptively advising the Division that the Carol Jones Recovery Center would not allow her to come back into its program, when in truth and fact she was eligible to reenter the program. Within two months before the hearing Mother refused to submit to a drug test, stating she would have tested positive.

Therefore, there was substantial evidence to support the Trial Court's finding that Mother's chemical dependency persisted in the same state as it did when the Court originally assumed jurisdiction over the Children, that it continued to prevent Mother from consistently providing the necessary care, custody, and control of the minor Children, and that it cannot be treated so as to consistently provide such care, custody, and control.

### (C) Inability to Provide the Children with Appropriate Care, Custody and Control

Evidence was presented at the hearing indicating that Mother is not able to maintain a stable and suitable residence for the Children. Since the time the Trial Court originally took jurisdiction of the Children until the time of the hearing, Mother had resided in a variety of dwellings including: a house with her sister and her sister's boyfriend; the Missouri Hotel in Springfield; a house with her mother, her oldest daughter and her oldest daughter's boyfriend; and finally, a house she was renting with help from her mother. Many of these residences were not suitable for the Children. While living at the Missouri Hotel, Mother allowed gentlemen friends to reside with her, in violation of the residency rules of that facility and in violation of the terms of her treatment plan. In December of 2005, just four months before the hearing, the Division's caseworker made a home visit to Mother's residence. Mother met her at the driveway and told the caseworker that it would not be a good idea for her to come in the house; it wasn't a suitable residence for her children. The house she was renting and residing in at the time of the hearing was appropriate but she had only lived in this house for three months prior to the hearing and she could only afford this house with her mother's financial assistance. Mother presented no evidence as to how long her mother would be able to continue to provide her with this financial assistance. Mother's inability to maintain a stable home from

before October 2002 until January 2006 is much more indicative of her future ability to provide a stable home for the Children than the relatively short three-month period immediately prior to the hearing which even then required the intervening financial assistance of her mother.

Mother also continues to have great difficulty providing financial support for the Children. After the Children were originally placed in the jurisdiction of the Trial Court, Mother was infrequently employed. The only evidence in the record indicating specific employment was her job as a housekeeper at a Clarion hotel from April 2004 through June 2004. From December 2004 until the date of the hearing, Mother never verified to the Division as required by her treatment plan that she was employed or that she was receiving any disability benefits. Further, throughout the entire time the Children were under the jurisdiction of the Court, Mother never provided any financial support to the Children. However, she would bring them small toys during some of her visits. The evidence indicates that Mother was unemployed at the time of the hearing.

This evidence shows a woman who was having trouble supporting herself, let alone supporting others. She has been infrequently employed during the last four to five years. She has lived in a variety of places, some of which were not suitable for children. At present she is unemployed, has no other apparent source of income, and is dependent upon her mother for help in providing her with a proper residence. Therefore, we find substantial evidence to support the Trial Court's finding that Mother's inability to provide the Children with appropriate care, custody, and control persisted in the same state as it did when the Court originally assumed jurisdiction over the Children.

On the day Mother's rights were terminated, she was in essentially the same position that she was when the Children first came under the jurisdiction of the Court: unable to manage her mental illnesses; a repetitive recipient of offers of substance abuse treatment which when accepted only led to relapses and when rejected resulted in continued abuse; and dependent upon others for housing.

## 2. Best–Interest Determination

The Trial Court found and concluded that the terminations of Mother's parental rights were in the best interest of the Children. Mother contests this conclusion by challenging two of the statutorily required findings under § 211.447.6.[3] Mother posits in her point relied on "that there was insufficient evidence for the Court to find clearly, cogently, and convincingly (1) that the mother has shown a disinterest in and lack of commitment to the minor children [§ 211.447.6(5) ], [and] (2) that there are no further services that could be offered to help rectify the situation and return the minor children back to the home [§ 211.447.6(4) ] [.]"

We first note that Mother is erroneous in her assertion that the Trial Court was required to make these findings upon clear, cogent, and convincing evidence. As noted above, the best-interest determination must only be supported by a preponderance of the evidence. *A.Y.M.*, 154 S.W.3d at 414.

■ We next note that the statutorily required "best-interest" findings under § 211.447.6 serve as an aid provided by the

3. The § 211.447.6(1–7) "best-interest" findings challenged by Mother here are:
"(4) Whether additional services would be likely to bring about lasting parental adjust-ment enabling a return of the child to the parent within an ascertainable period of time; [and] (5) The parent's disinterest in or lack of commitment to the child[.]"

legislature to the court in deciding best interest, but are not the only considerations. *Id.* at 416–17. The trial court's best-interest conclusion is based on the totality of the evidence presented. *Id* at 417. Mother has failed in her point relied on and in the argument portion of her brief to claim or demonstrate that the best-interest determination is not supported by the totality of the evidence. For this reason, she has failed to preserve any claim of error that materially affected "the merits of the action." *Id.* at 417, *quoting* Rule 84.13(a)-(b).

■ However, we have *ex gratia* reviewed the entire record and find that the Trial Court's best-interest determination is supported by the preponderance of the evidence and as such is not an abuse of discretion. In addition, we have examined the two particular best-interest findings of which Mother complains and find each to be supported by a preponderance of the evidence.

### (A) Disinterest in and lack of commitment to the Children— § 211.447.6(5)

In arguing this issue in her brief, Mother urges upon this court a view of the evidence from the light most favorable to her position. However, when viewing the evidence, as we must, in the light most favorable to the judgments terminating Mother's parental rights in the Children, it is clear that the Trial Court's finding is supported by substantial evidence.

Each time that Mother made the decision not to see her therapist or take her medications for her mental conditions, she was placing her wants, needs, and desires above those of the Children. Each time that Mother used an illegal substance, failed to heed the advice received in substance abuse treatment, failed to complete substance abuse treatment, or failed to attend proffered substance abuse treat-

ment, she was placing her wants, needs, and desires above those of the Children. Every decision Mother made contributing to her failure to obtain and maintain gainful employment was a decision to place her wants, needs, and desires above those of the Children. Every instance of bringing a gentleman friend into her home distracted from her ability to provide and maintain a stable home for the Children.

The Children were brought into custody in October 2002, and the hearing on the petitions for termination was held in April 2006. For over three and one-half years Mother had countless opportunities to make decisions in accordance with the wants, needs, and desires of her Children, but she chose not to do so. This time period represents over one-half of her youngest child's life. In spite of her *words* declaring her interest and commitment to her Children, her *actions* over this time period provided substantial evidence to support the Trial Court's finding that Mother has shown a disinterest in and lack of commitment to the Children.

### (B) No additional service likely to bring about lasting parental adjustment— § 211.447.6(5)

Likewise on this sub-point, Mothers argues in her brief from the perspective which views the evidence in the light most favorable to Mother's position. When viewed in the light most favorable to the judgments terminating her parental rights, the following is disclosed.

The Division offered Mother services to acquire skills necessary for her to manage her mental conditions, yet for the two years immediately prior to the hearing Mother chose not to share any information with the Division concerning these conditions. Mother has failed to identify any service that would assist her in managing her mental conditions which the Division

failed to provide when requested. The testimony of the Division's caseworkers indicated that they were not aware of any other services which could be made available to assist Mother in managing her mental conditions.

The Division constantly offered referrals to Mother for substance abuse treatment. Initially, Mother took advantage of these services but failed to assimilate the information acquired in treatment in such a manner as to effectuate a change in her substance abusing lifestyle. On the last such referral, Mother essentially refused to attend treatment by deceitfully informing the Division that she was ineligible for the program, when in fact she knew she was eligible. Mother was offered drug testing services to assist her in maintaining her accountability in refraining from using illegal substances, yet on several occasions she refused to take the tests and admitted that they would be positive for an illegal substance. Mother has failed to identify any service she has requested of the Division to provide to assist her in dealing with her substance abuse issues which the Division failed to provide. Mother has failed to identify any evidence in the record which would indicate that any proffered substance abuse treatment in the future would have any glimmer of being successful. Such evidence is especially necessary, given the dismal failure of the numerous treatment programs in which Mother has participated in the past, Mother's flagrant and continued use of controlled substances while knowing she was subject to periodic testing by the Division and that positive test results could lead to the termination of her parental rights. The Division's caseworkers testified that they were not aware of any other services they could offer which had not already been made available to Mother and which would assist Mother in addressing her chemical-dependency issues.

Generally, the Division agreed in Mother's treatment plan to "make referrals to appropriate resources to assist [Mother] in meeting her responsibilities. If funds are available, the [Division] will help pay for the services." Mother has not identified anywhere in the record where she requested a service for which the Division failed to make a referral or provide. Likewise, Mother has failed to identify any evidence in the record or argue in her brief that there are any specific services that could be provided to bring about lasting parental adjustment enabling a return of the Children to Mother's home within an ascertainable period of time.

The challenged finding of the Trial Court was that "[b]ased upon the lack of participation and cooperation by the [Mother], [her] failure to assimilate services, the Court finds that even if additional services existed, there is little likelihood that they would enable a return of the [Children] to [Mother]." This finding is supported by substantial evidence.

### Conclusion and Decision

On August 11, 2003, the Trial Court took jurisdiction over the Children because of Mother's unmanaged mental condition, chemical dependency, and her inability to provide the Children with appropriate care, custody, and control. On June 15, 2006, the Trial Court ordered Mother's parental rights terminated upon finding that these conditions still exist. Because there is substantial evidence supporting its findings, the judgment of the Trial Court is affirmed.

BATES, P.J./C.J., and GARRISON, J., concur.