**In the Interest of S.M.B., JR.**

No. 28800.

Missouri Court of Appeals, Southern District, Division One.

May 22, 2008.

Christopher A. Hazelrigg, Springfield, for Appellant.

William C. Prince, Springfield, for Respondent Greene County Juvenile Office.

Gary Z. Collins, Springfield, for Juvenile/Minor.

JEFFREY W. BATES, Judge.

S.M.B., Jr. (S.M.B.), is the child of C.B. (Mother) and S.M.B., Sr. (Father). Mother appeals from a judgment terminating the parental rights of Mother and Father pursuant to a petition filed by the Deputy Juvenile Officer of Greene County, Missouri.[1] Mother was not formally served. Nevertheless, she appeared at the termination hearing in person and by counsel, and they fully participated in the trial. After the presentation of evidence, the tri-

1. The propriety of the court's ruling as to Father is not at issue because he did not appeal.

al court terminated Mother's parental rights pursuant to § 211.447.4(2) because she had neglected S.M.B.[2] On appeal, Mother contends the court erred because: (1) absent formal service of process, the trial court lacked jurisdiction to terminate Mother's parental rights; and (2) the evidence was insufficient to support the statutory ground for termination. Finding no merit in either contention, this Court affirms.

## I. Factual and Procedural Background

When we review a trial court's judgment terminating parental rights, we consider the facts and the reasonable inferences derived therefrom in a light most favorable to the judgment. *In re L.R.S.*, 213 S.W.3d 161, 164 (Mo.App.2007); *In re L.M.*, 212 S.W.3d 177, 180 (Mo.App.2007). Viewed in that light, the following evidence was adduced at trial.

S.M.B. was born January 3, 1995. Thereafter, Mother and Father got married and then separated. In October 2005, S.M.B. was living with Father; his pregnant girlfriend, A.P.; and their child, D.B. After A.P. gave birth to another child, L.B., the Children's Division (Division) performed a newborn-crisis assessment at the hospital because of A.P.'s reported drug use during the pregnancy. The test revealed the presence of methamphetamine in L.B.'s meconium. Shortly thereafter, D.B. and L.B. were taken into protective custody by the Division. S.M.B., however, could not be located. Father reported that S.M.B. had no contact with Mother due to concerns about her drug use. When the Division contacted Mother, she did not know where S.M.B. was. Through the Division's own investigation,

S.M.B. was located in Adair County, Missouri. He was brought back to Greene County and placed in the protective custody of the Division.

Division caseworker Jodi Kelley (Kelley) worked on S.M.B.'s case from its inception. The initial case goal was unification of S.M.B. with Mother and Father. In furtherance of that goal, Kelley prepared a treatment plan. Kelley's initial concerns about Mother included unauthorized persons residing in the household with her and substance abuse. Mother's responsibilities included: (1) visiting S.M.B. on a regular basis; (2) paying child support and providing in-kind support; (3) maintaining stable, safe housing; (4) not allowing other individuals to frequent the household who would pose a threat to S.M.B. and/or who are involved in criminal activity such as drug use, possession or sale; (5) obtaining a drug/alcohol assessment and following all recommendations; (6) submitting to random drug testing; (7) completing a psychological evaluation and following all recommendations; and (8) utilizing services to learn life skills like child care, nutrition and health care. In the months that followed, Mother made little progress in complying with the requirements of her treatment plan.

On December 8, 2006, the juvenile officer filed a petition to terminate the parental rights of Mother and Father based upon the statutory grounds of abandonment and abuse/neglect of S.M.B. That same day, the court appointed attorney Andy Brown to represent Mother. On December 11, 2006, a summons for Mother was issued for service on December 14, 2006.

---

**2.** All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2007).

The next day, attorney Brown entered his appearance for Mother and filed an answer to the petition on her behalf. The answer did not raise the issue of lack of personal jurisdiction over Mother. On December 20, 2006, the summons to Mother was returned *non est* because she had moved. It does not appear from the record that any further service on Mother was attempted.

The hearing on the petitions to terminate parental rights of Mother, Father and A.P. was held on August 27, 2007.[3] Mother appeared in person and with attorney Brown. At no point during this hearing did Mother raise the issue, by motion or otherwise, that the trial court lacked personal jurisdiction because Mother had not been formally served with the summons and petition.

The evidence supporting the termination of Mother's parental rights came from Kelley. She testified that Mother was supposed to visit S.M.B. on a regular basis. After S.M.B. was placed in the Division's custody, visitation was freely available to Mother whenever she called to schedule a visit. From October through December 2005, Mother visited S.M.B. once. During the entire 2006 calendar year, Mother visited S.M.B. once. From January through August 2007, Mother did not visit S.M.B. at all. Mother offered no explanation for her failure to visit S.M.B., nor did she call to check on his welfare. Mother did not maintain any other form of contact with S.M.B., such as through letters or cards. In addition, Mother failed to provide any financial support for S.M.B. Except for one hand-held video game that was given to S.M.B. in November 2005, Mother failed to provide any other in-kind support for him.

In every other aspect of Mother's treatment plan, she was non-compliant. In June 2007, Kelley learned that Mother was incarcerated.

Attorney Brown participated fully in the hearing. During his cross-examination of Kelley, he adduced testimony that Mother had "some major medical problems" in 2006 and that she was never employed to Kelley's knowledge. On one occasion, a scheduled visit with S.M.B. was cancelled after Mother called and reported that she had been in a "car wreck and couldn't make it to the visit." Although Mother was present in court and had the opportunity to testify, she declined to do so. At the conclusion of the hearing, Brown presented a closing argument on Mother's behalf.

After hearing the evidence, the trial court terminated Mother's parental rights to S.M.B. because she neglected the child by repeatedly and continuously failing to provide for his needs. The court made specific findings that: (1) Mother failed and refused to provide financial or in-kind support for S.M.B.; (2) there was no evidence that Mother lacked the ability to provide such support; and (3) Mother failed and refused to maintain a parental relationship with S.M.B. The court also determined that it was in S.M.B.'s best interest to terminate Mother's parental rights. This appeal followed.

## II. Standard of Review

To terminate parental rights, a trial court must use a two-step analysis. *In re S.J.H.*, 124 S.W.3d 63, 66 (Mo.App. 2004). In the first step, the court must find by clear, cogent and convincing evidence that one or more statutory grounds

---

**3.** A separate petition to terminate the parental rights of Father and A.P. to D.B. and L.B. had been filed. The trial court consolidated the cases and held one evidentiary hearing to decide whether to terminate the parental rights of all three parents to their respective children.

for termination exist. § 211.447.5; *In re P.L.O.*, 131 S.W.3d 782, 788 (Mo. banc 2004). "Clear, cogent, and convincing evidence is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). This standard of proof may be satisfied even though the court has contrary evidence before it or the evidence might support a different conclusion. *In re A.K.F.*, 164 S.W.3d 149, 151 n. 1 (Mo. App.2005). After finding one or more statutory grounds for termination have been proven, the trial court then moves to the second step and must determine, by a preponderance of the evidence, whether the termination of parental rights is in the child's best interest. § 211.447.5; *P.L.O.*, 131 S.W.3d at 789; *S.J.H.*, 124 S.W.3d at 66.

■■■ On appeal, we review a trial court's decision that one or more statutory grounds for termination exist to determine whether the ruling is supported by substantial evidence, is against the weight of the evidence, or involves an erroneous application or declaration of the law. *S.M.H.*, 160 S.W.3d at 362. We will not reverse the trial court's decision unless we are left with the firm belief that the decision was wrong. *Id.* Conflicting evidence will be reviewed in the light most favorable to the judgment of the trial court. *In re A.S.W.*, 137 S.W.3d 448, 452–53 (Mo. banc 2004). We defer to the trial court's assessment of witness credibility. *In re C.F.C.*, 156 S.W.3d 422, 426 (Mo.App.2005).

## III. Discussion and Decision

In Mother's first point, she contends the trial court lacked jurisdiction to terminate her parental rights because she was not served with the summons and petition in person, by mail or by publication. Mother argues that "her mere appearance at the trial did not constitute a waiver of the personal service."[4] This Court disagrees.

Mother's argument ignores the plain language of the statute and court rule governing service of process in a termination of parental rights proceeding. The statutory requirements for service are contained in § 211.453, which states:

1.  Service of summons shall be made as in other civil cases in the manner prescribed in section 506.150, RSMo. However, if service cannot be made as prescribed in section 506.150, RSMo, *and it is not waived*, then the service shall be made by mail or publication as provided in section 506.160, RSMo.

2.  Persons who shall be summoned and receive a copy of the petition shall include:

    (1) The parent of the child, including a putative father who has acknowledged the child as his own by affirmatively asserting his paternity, unless the parent has filed a consent to the termination of parental rights in court;

    (2) The guardian of the person of the child;

    (3) The person, agency or organization having custody of the child;

    (4) The foster parent, relative or other person with whom the child has been placed; and

---

**4.** Mother cites no relevant authority to support this argument. Her reliance on *In Interest of Loveheart,* 762 S.W.2d 32 (Mo. banc 1988), is misplaced because the parent in that case did not appear at the trial. *Id.* at 33. That critical difference renders *Loveheart* factually distinguishable and, thus, inapposite.

(5) Any other person whose presence the court deems necessary.

3. The court shall not require service in the case of a parent whose identity is unknown and cannot be ascertained, or cannot be located.

4. *Any person required to receive summons may waive appearance or service of summons.*

(Italics added.) Additionally, Rules 110–28 govern the practice and procedure in the juvenile division. Rule 110.01. As used in these rules, the word "custodian" includes a child's parent. Rule 110.05.a(5). Rule 115.06.b states that "[a]ppearance at the hearing by a custodian shall constitute a waiver by the custodian of service of summons."

■■■ In the case at bar, it is undisputed that Mother was not served with the summons and petition in person, by mail or by publication. The necessity for such service was waived when Mother appeared at trial represented by counsel, failed to assert a lack of jurisdiction over her person and then fully participated in the hearing on the merits of the termination petition. *See In the Interest of M.R.F.*, 907 S.W.2d 787, 793 (Mo.App.1995) (failure to serve summons on mother did not deprive the trial court of jurisdiction because mother waived service by appearing in person and with court-appointed counsel, confronting and cross-examining witnesses, and presenting evidence). Based on the plain language of § 211.453 and Rule 115.06.b, Mother waived service by appearing at the hearing. "A claim of lack of personal jurisdiction may be waived when a defendant makes no motion or pleadings on the issues but otherwise subjects himself to the jurisdiction of the court. These principles apply equally in proceedings in juvenile court as they do in other proceedings." *In the Interest of C.J.G.*, 219 S.W.3d 244, 248 (Mo. banc 2007) (citation omitted). That is exactly what occurred here. Point I is denied.

■■■ In Mother's second point, she contends the court erred in terminating her parental rights because the evidence was insufficient to prove abuse or neglect pursuant to § 211.447.4(2). Mother argues the evidence was insufficient to prove that, although physically and financially able to do so, she repeatedly or continuously failed to provide S.M.B. with adequate food, clothing, shelter, education, care or control.[5] Before addressing Mother's arguments, a brief review of the relevant statutory framework is helpful.

■■■ Section 211.447.4(2) authorizes a court to terminate parental rights if "[t]he child has been abused or neglected." This subsection of the statute also states:

In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custo-

**5.** Mother's second point also asserts that the trial court erred in determining that termination of her parental rights was in S.M.B.'s best interest. Because Mother abandoned the issue by failing to develop it in the argument section of her brief, we will not review the best-interest determination. *See In re L.N.D.*, 219 S.W.3d 820, 825 n. 5 (Mo.App.2007); *Roberson v. KMR Constr., LLC*, 208 S.W.3d 320, 322 (Mo.App.2006).

dy and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development[.]

§ 211.447.4(2)(a)-(d). These four factors are simply categories of evidence to be considered along with other relevant evidence, rather than separate grounds for termination in and of themselves. *See In re L.M.*, 212 S.W.3d 177, 182 (Mo.App. 2007). Nevertheless, proof of one such factor is sufficient to support termination on the statutory abuse or neglect ground. *See In re A.S.O.*, 75 S.W.3d 905, 912–13 (Mo.App.2002); *In re N.M.J.*, 24 S.W.3d 771, 778 (Mo.App.2000).

■ In the case at bar, the trial court considered and made findings as to all four factors. The court did not rely upon factors (a)-(c) because there was no evidence showing their applicability. The court did find factor (d) to be applicable because: (1) Mother failed to provide S.M.B. with any financial support; (2) Mother provided minimal in-kind support; (3) she only visited S.M.B. two times between October 2005 and August 2007; and (4) Mother was almost totally noncompliant with her treatment plan.

As we understand Mother's argument, she takes issue with the court's finding that she was physically and financially able to provide for S.M.B.'s needs, but failed to do so. Mother argues her car wreck and subsequent incarceration explain her infrequent visits and failure to provide support, and "should not be held against her." This Court disagrees.

First, the only reference in the record to the "car wreck" came from Kelley, who testified that Mother had cancelled one scheduled visitation for that reason. There was no evidence that Mother sustained any injuries in the accident. Kelley was aware that Mother had health problems in 2006, but the nature and extent of Mother's condition was not discussed at trial. In particular, there was no evidence whatsoever that Mother had any medical condition that prevented her from: (1) holding a job to support S.M.B.; (2) coming to visit him; or (3) communicating with him via cards, letters or the telephone.

■ Second, there was no evidence presented at trial concerning the date when Mother's incarceration began. All the record revealed was that Kelley first learned of it in June 2007, which was only a couple of months before the termination hearing. As the judge noted, "[Mother's] incarcerated. I don't know how long. I'll—you know, I don't know how—what her situation is. She hasn't provided us with any of that information as to when she might be out." The court drew an adverse inference against Mother for failing to testify and provide that information, which is permissible in this civil proceeding. *See Stringer v. Reed*, 544 S.W.2d 69, 74 (Mo.App.1976) (noting the well-settled principle that the failure of a party, having knowledge of facts and circumstances vitally affecting the issues on trial, to testify

in his own behalf raises a strong presumption that such testimony would have been unfavorable and damaging to the party who fails to proffer it); *Smith v. Director of Revenue,* 77 S.W.3d 120, 122 n. 3 (Mo. App.2002) (applying the same principle in a civil driver's license suspension proceeding). The court concluded that the evidence showed "really no participation at all" by Mother from the outset of S.M.B.'s placement with the Division. The record fully supports that conclusion and demonstrates a continuing pattern by Mother of neglecting S.M.B. Before S.M.B. was taken into custody, his contact with Mother was limited due to concerns about her drug use. After S.M.B. was taken into custody, Mother consistently and repeatedly failed to provide for his physical and emotional needs. According to Kelley, Mother failed to visit S.M.B. without explanation, call about his welfare or send letters or cards to S.M.B. evidencing some commitment to their relationship. Mother's behavior shows a lack of interest and commitment to S.M.B. *See In re L.N.D.,* 219 S.W.3d 820, 828 (Mo.App.2007). Mother's health problems and/or incarceration did not provide an excuse for such behavior. Mother still had an obligation to provide S.M.B. with a continuing relationship through communication and visitation. *In re I.Q.S.,* 200 S.W.3d 599, 604 (Mo.App. 2006); *In re J.M.S.,* 83 S.W.3d 76, 83–84 (Mo.App.2002). Similarly, Mother's health problems and/or incarceration did not relieve her of the obligation to make a minimal financial contribution for S.M.B.'s support so as to demonstrate an intent to continue the parent-child relationship. *See In re N.L.M.,* 101 S.W.3d 376, 381 (Mo. App.2003). "Evidence of this intent is lacking when the parent fails to make any contribution, no matter how diminutive the amount." *In re C.M.D.,* 18 S.W.3d 556, 562–63 (Mo.App.2000). There is sufficient evidence to support the court's finding that Mother repeatedly and continuously failed to provide for S.M.B.'s needs. Therefore, the court properly terminated Mother's parental rights pursuant to § 211.447.4(2). Point II is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SCOTT, J., Concur.