**In the Interest of N.R.W.**

**Nos. WD 62176, WD 62177.**

Missouri Court of Appeals, Western District.

Aug. 19, 2003.

John Alexander Lozano, Harrisonville, for Appellant.

Cathelene Louise Winger, Harrisonville, for Respondent.

RONALD R. HOLLIGER, Judge.

N.F.W. ("Father") and L.M.B. ("Mother"), the unmarried parents of N.R.W., appeal the judgment of the trial court terminating their parental rights to their child. We find that the trial court properly found grounds for termination of parental rights pursuant to Section 211.447.2(2), RSMo 2000,[1] and that termination was in the best interests of the children. We, therefore, affirm the judgment terminating Father's and Mother's parental rights with regard to the child.

## Facts and Procedural Background

N.F.W. was born on September 30, 2001, in Clay County, Missouri, at Liberty Hospital. Mother and the child were both tested for the presence of illegal drugs shortly after delivery and both tested positive for the presence of methamphetamine. On October 1, 2001, Mother left the hospital without being discharged and without notice to the hospital employees, to accompany Father to Raytown where he was scheduled to receive a drug test. On their return, the hospital denied them access to the newborn baby. The Division of Family Services was notified, and the Division took protective custody of the child on October 2, 2001. Shortly thereafter, the case was transferred to Cass County, where the parents resided.

On October 5, 2001, Father and Mother were permitted a brief visitation with the child. The parents were also to meet with the DFS case worker on that date, but the meeting was apparently disrupted because the parents became argumentative, especially Father, who was arrested for trespass after breaking into a secure area of the DFS office. In the weeks after that meeting, both parents continued to use methamphetamine and were evicted from their apartment due to nonpayment of rent. They made no further attempts to contact or arrange visitation with the child for a number of months.

On November 7, 2001, the DFS case worker sent parents a written service agreement to their last known address, with no response. The Division also attempted to schedule a second meeting with Mother and Father on November 28, 2001, but it is not clear whether either parent received notice of that meeting.

Father was incarcerated on December 5, 2001, due to a probation violation. Mother

---

1. All statutory citations are to RSMo 2000, unless otherwise indicated.

was jailed in January 2002, on charges of drug possession and fraudulent use of a credit device. In late January 2002, DFS attempted to again contact parents with regard to the case and the services that Father and Mother would need to pursue if they wished to work towards reunification.

The juvenile division held a dispositional hearing on February 13, 2002, upon the Juvenile Officer's petition pursuant to Section 211.031, RSMo. Shortly thereafter, a judgment was entered finding that the parents had abandoned the child. Pursuant to that judgment, N.R.W. was placed in the custody of DFS for foster care placement.

Father's first contact with the child since October 5, 2001, took place on March 14, 2002, when DFS received a letter addressed to the child. Father (who was still incarcerated) sent three more letters over the following month. He also sent DFS a completed copy of the Written Service Agreement on March 28, 2002. At no point did Father make efforts to provide or arrange for any other support or care for the child.

Mother's next contact with the Division did not take place until June 21, 2002, over eight months after her last visitation with the child and well after the termination of parental rights petition was filed. Subsequently, she had at least one visitation with the child. As with Father, she provided or arranged for no other support or care of the child.

The Juvenile Officer filed a petition on April 1, 2002, seeking termination of both parents' rights to N.R.W. The matter proceeded to trial on September 26 and 27, 2002, at the conclusion of which the trial court found that grounds existed to terminate parental rights and that termination of those rights was in the best interests of the child. The trial court, therefore, terminated the parental rights of both Father and Mother with regard to N.R.W. Father and Mother now appeal that judgment.

## Discussion

In a termination of parental rights case, we will affirm unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *In re C.W.*, 64 S.W.3d 321, 324 (Mo.App.2001). We review to determine whether the judgment is supported by clear, cogent, and convincing evidence and is in the best interests of the child. *In the Interest of A.R.*, 52 S.W.3d 625, 633 (Mo. App.2001). We view the facts and evidence in the record in the light most favorable to the judgment, giving deference to the trial court's credibility determinations. *See In re C.W.*, 64 S.W.3d at 324.

A judgment terminating parental rights must engage in a two-step analysis. First, the trial court must find clear, cogent, and convincing evidence that provides grounds for termination of parental rights. *See In re K.C.M.*, 85 S.W.3d 682, 690 (Mo.App.2002). Clear, cogent, and convincing evidence is that which " 'instantly tilts the scales in the affirmative' and leaves the fact finder's mind 'with an abiding conviction that the evidence is true.' " *In re J.W.*, 11 S.W.3d 699, 703 (Mo.App.1999) (quoting *In Interest of S.H.*, 915 S.W.2d 399, 403 (Mo.App.1996)). Second, if (and only if) grounds for termination exist, the trial court must determine whether termination of parental rights is in the child's best interest. *See In re K.C.M.*, 85 S.W.3d at 690. This latter step of the analysis need only be supported by a preponderance of the evidence. *Id.*

Here, Father and Mother, in their three points on appeal, address the first

step of the trial court's analysis, challenging only the grounds for termination of parental rights found by the trial court. Where the trial court finds multiple grounds for termination, any one of those grounds is sufficient to sustain the judgment. *See In re C.W.*, 64 S.W.3d at 324. Father and Mother raise no argument with regard to the second step of the analysis, and we, therefore, assume that they concede that the trial court correctly determined that termination of parental rights would be in the child's best interest, assuming grounds for termination exist.

In their first point on appeal, Father and Mother contend that the trial court erred in finding grounds for termination of parental rights because there was no clear, cogent, and convincing evidence that the child had been abandoned.

■ Some confusion arises in evaluating this point, as the trial court did not clearly indicate which subsections of Section 211.447 applied in finding grounds for termination.[2] Both the petition and the judgment refer to the child having been abandoned for a period of six months, which would seem to refer to Section 211.447.4(2), RSMo. That subsection, however, concerns abandonment of a child who is at least one year of age at the time the termination of parental rights petition is filed. N.R.W. was only seven months old when the petition was filed. When a child is less than one year of age at the time the petition has been filed and a court

of competent jurisdiction has determined in an abuse and neglect proceeding under Section 211.031, RSMo, that the child has been abandoned, then Section 211.447.2(2), RSMo, is the applicable subsection of the statute, not Section 211.447.4(2), RSMo. Section 211.447.2(2), unlike Section 211.447.4(2), does not establish a minimum period that must be met before abandonment can be found.[3] Section 211.447.2(2)(b) provides that a court may find that an infant has been abandoned if "[t]he parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so."

■ Abandonment is largely an issue of the intent of the parents, inferred from their conduct. *In the Interest of B.B.B.*, 905 S.W.2d 118, 122 (Mo.App.1995) (quoting *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984)). Here, Mother and Father contend that N.R.W. was involuntarily removed from their custody. Normally, "a finding of abandonment is not compatible with a finding that custody has ended involuntarily." *In the Interest of B.C.H.*, 718 S.W.2d 158, 166 (Mo.App.1986). However, even when a child is involuntarily removed from a parent, the court may conclude that the child has been abandoned when "a parent's lack of involvement goes beyond what is attributable to the estrangement and discour-

---

**2.** The trial court is not required to cite the specific subsections of Section 211.447 it is relying upon as grounds for termination of parental rights. *In Interest of J.I.W.*, 695 S.W.2d 513, 514 (Mo.App.1985). In practice, however, clearly indicating (in both the termination of parental rights petition and the judgment) which subsections of Section 211.447 provide grounds for termination in a particular case is often helpful. By doing so, notice is clearly given to the parties as to the precise issues that will be raised at trial. This

practice also greatly helps to insure that the judgment satisfies the detailed requirements and findings of Section 211.447. Of course, providing such citations also provides additional clarity in the record on appeal.

**3.** Prior to 1998, it was necessary to establish that a child under one year of age had been abandoned for at least sixty days to find grounds for termination. § 211.447.2(1), RSMo Supp.1997.

agement caused by the enforced separation." *Z.H. v. G.H.*, 5 S.W.3d 567, 571 (Mo.App.1999).

With regard to Father, the evidence shows that Father made no attempts to arrange visitation with the child or communicate with the child from October 5, 2001, until he was incarcerated the following December. Nor did he make any attempt to provide financial or other support for the child during that period. After his incarceration, he persisted in his failure to communicate with the child until March 2002, when he sent two letters prior to the filing of the TPR petition. The trial court found that those attempts at communication were merely token efforts and were not persuasive. Further, Father failed to make any provision for the child's care during any point prior to trial. In our view, the evidence adduced presented clear, convincing, and cogent proof of abandonment of N.R.W. by Father.

Similar evidence supports a finding of abandonment with regards to Mother. The evidence adduced established that Mother made no effort to see the child or to provide support for the child from October 5, 2001, through the date she was incarcerated in January 2002. Indeed, Mother made no effort to seek contact with the child until June 2002, over eight months after her last visitation with the child. As with Father, the trial court's finding that she had abandoned the child was supported by clear, cogent, and convincing evidence.

Despite the involuntary removal of the child from the custody of Father and Mother, there was clear, cogent, and convincing evidence that establishes a lack of involvement by them which transcends the estrangement and discouragement that resulted from the removal of the child. Even if we were not to consider Mother's and Father's action in leaving the baby at the hospital on October 1 as an abandonment, there is ample evidence from their subsequent conduct to make that finding. Between the October 5, 2001, visitation and the parents' incarceration, neither Father nor Mother made an effort to seek contact with the child. Nor did either parent provide for the child during that time. After their incarceration, we acknowledge that the parents' ability to financially provide for the child's care was sharply curtailed. However, it is more significant to us that a number of months passed before each parent sought contact with the child.

We conclude that the trial court did not err when it found that both Father and Mother left N.R.W. without support or failed to arrange for visitations or communicate with the child for an extended period of time, despite being able to do so. Upon that basis, we hold that the trial court could properly find grounds for termination of parental due to the parents' abandonment of the child. *See B.B.B.*, 905 S.W.2d at 122. Father and Mother's first point on appeal is denied.

Father and Mother's second point on appeal argues that the trial court did not have clear, cogent, and convincing evidence to support its finding of grounds for termination of parental rights due to abuse or neglect. Their third point on appeal argues that the trial court improperly found grounds for termination due to a "severe act" of abuse that was not pled in the termination of parental rights petition. Both of these two points on appeal challenge other grounds for termination of parental rights.

As we stated at the outset, we should uphold the judgment below if the evidence supports any one of multiple grounds. As we have held that the trial court properly found grounds for termination due to

abandonment, we need not take up the remaining points on appeal raised by Father and Mother. Neither parent challenges the trial court's finding that termination of parental rights was in the child's best interest. Therefore, we hereby affirm the judgment terminating the parental rights of N.F.W. and L.M.B. with regard to N.R.W.

PAUL M. SPINDEN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.

