**In the Interest of: V.J.B., S.H.B., A.G.B., K.C.V. and C.A.V., Minors.**

**C.V.E., Natural Mother, Appellant,**

v.

**GREENE COUNTY JUVENILE OFFICE, Respondent.**

**Nos. SD 30561, SD 30562, SD 30563, SD 30564, SD 30565.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 20, 2010.

Application for Transfer to Supreme Court Denied Jan. 10, 2011.

Application for Transfer Denied March 1, 2011.

Arthur E. Olson, Springfield, MO, for Appellant.

Bill Prince, Springfield, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

C.V.E. ("Mother") appeals the respective judgments terminating parental rights to her minor children, V.J.B., S.H.B., A.G.B., K.C.V. and C.A.V. (collectively referred to as the "Children").[1] We affirm the judgments of the Juvenile Division of the Circuit Court of Greene County ("the juvenile division").

---

1. The individual cases for each child were consolidated for this appeal. A petition was filed on behalf of each child and a separate judgment was entered with respect to each child.

### Factual and Procedural History

█ In reviewing a juvenile division's judgment terminating parental rights, we consider the facts and reasonable inferences therefrom in the light most favorable to the judgment and deliver them with this standard in mind. *In the Interest of L.M. and S.C.M.*, 212 S.W.3d 177, 180 (Mo.App. S.D.2007).

All five children, ranging in ages from 5 to 16 years old, were born to Mother. A.V. ("Father"), is the father of K.C.V. and C.A.V., and the step-father of V.J.B., S.H.B. and A.G.B.[2] The natural father of V.J.B., S.H.B. and A.G.B. is deceased.

Since 2005, Mother and Father have had an extensive history with the Missouri Department of Social Services, Children's Division ("Children's Division"). Before the Children were initially placed in foster care, the family was the subject of six hotline reports involving allegations of poor hygiene, physical abuse, unsanitary living conditions, and lack of food. In November 2006, the Children were placed in foster care in Taney County due to issues involving unsanitary living conditions, domestic violence between Mother and Father, and Father's substance abuse. In August 2007, Mother was reunited with the Children and the Taney County cases were closed. On August 24, 2007, a report was made alleging the Children were not enrolled in school.

Thereafter, Mother and Father continued to struggle with the same issues that initially led to placement of the Children in State care. On January 26, 2008, another hotline report was received concerning unsafe/unsanitary home conditions, including allegations of dog feces and broken glass in the home. On January 28, 2008, after an investigation of this incident, Mother and Father signed over temporary guardianship of the Children to the Children's paternal aunt and uncle. Subsequently, V.J.B., S.H.B. and A.G.B. disclosed sexual abuse by Father and an investigation was conducted. On April 8, 2008, the alleged sexual abuse was substantiated by a finding of a preponderance of the evidence.

On May 9, 2008, the Greene County Juvenile Office ("juvenile office") filed petitions alleging neglect and/or abuse of the Children by Mother and Father. The petitions alleged domestic violence, sexual abuse, and an inability/unwillingness on the part of Mother to protect the children. On June 18, 2008, the juvenile division found the allegations contained in the petitions were true and ordered a treatment plan for Mother.

Kevin Henson ("Mr. Henson"), a Children's Division caseworker, assumed case management for the Children from May 2008 through August 2008. The main issues Mother was to address included domestic violence and alcohol. Mr. Henson prepared a treatment plan with the goal of reunification of the Children with Mother.

The treatment plan provided Mother was to continue contact with the Children through visitation. Mother initially maintained contact with the Children; however, visitation subsequently ceased due to an investigation related to the allegations of sexual abuse by Father. Visitation did not resume until November 2008.

During Mr. Henson's management of the case, Mother did not demonstrate the ability to maintain stable and appropriate

---

2. On October 13, 2009, Father voluntarily executed his "Consent to Termination of Parental Rights and Consent to Adoption" for K.C.V. and C.A.V. The juvenile division subsequently found the termination of Father's parental rights was in the best interests of K.C.V. and C.A.V. and ordered his rights terminated. Therefore, this decision addresses only the issues raised by Mother.

housing as required by the treatment plan. Mother continued to reside with Father even though that arrangement was deemed inappropriate due to concerns of domestic violence and sexual abuse.

On June 17, 2008, Mother completed a psychological evaluation with Dr. Mark Bradford. Dr. Bradford observed Mother to be a highly avoidant, depressive, dependent and easily malleable and helpless woman. He diagnosed Mother with: (1) chronic adjustment disorder with mixed anxiety and depressed mood; (2) avoidant personality disorder with gross feelings of personal inadequacy, dependency and complete powerlessness; and (3) personality disorder not otherwise specified with avoidant, passive aggressive, schizotypal features. Dr. Bradford also remarked Mother suffered from "a seeming lack of ability as to how to raise the [Children] better" and lacked "much general or common sense knowledge that most people her age possess." Dr. Bradford indicated the prognosis for Mother to care for the Children in the near future was very guarded pending her cooperation with appropriate therapeutic and social work remediation plans; if Mother failed to cooperate, or if additional difficulties continued to appear, then the prognosis would go from guarded to poor.

Mr. Henson referred Mother to individual counseling and parenting classes but she did not provide verification of attendance and complained of transportation difficulties. Despite having been employed, although sporadically, Mother failed to provide the Children with financial or in-kind support from May 2008 through August 2008.

In September 2008, Mr. Henson transferred the case to Angel Donson ("Ms. Donson") for case management. She oversaw the case from September 2008 through October 2009. The goal of the case continued to be reunification of the Children with Mother. Ms. Donson reported Mother was consistently uncooperative with her and described Mother as very passive. Mother would move and not inform Ms. Donson in a timely manner. When Ms. Donson began working with Mother, Mother was living in a trailer in Neosho, Missouri. Ms. Donson reported Mother moved so frequently she had trouble keeping up with her. Ms. Donson believed Mother moved approximately six times. Mother reportedly lived with friends and relatives and was not consistently forthcoming with information regarding the identity of individuals with whom she lived.

Ms. Donson expressed ongoing concerns that Mother was continuing her relationship with Father. Mother reported Father was abusive to her and blamed the abuse on his use of alcohol. Based on those continuing concerns, Mother was referred to domestic violence shelters and counseling. However, Mother failed to follow through with those referrals.

Visits between Mother and the Children resumed in November 2008. Ms. Donson described Mother as being overwhelmed during the visits and would "give attention to one, and then where the others were, sometimes she didn't know where they were." Visits were again suspended in September 2009 due to a report that Mother had allegedly displayed pornography to V.J.B., and continued concerns about Mother's involvement with Father. When Mother had visitation available, she did not always attend. She did, however, generally maintain contact with the Children through phone calls.

Mother was referred to counseling and attended approximately six sessions but often missed sessions due to lack of transportation. Ms. Donson then arranged for in-home counseling. However, these ses-

sions stopped because the counselor felt unsafe around Father, and because Mother often missed sessions. Ms. Donson never received a letter indicating Mother had successfully addressed her domestic violence or stability issues and was no longer in need of counseling. Ms. Donson described Mother as one of the worst cases of an abused woman she had seen.

The treatment plan also required Mother to contribute in-kind items when financially able. Mother was sporadically employed but did not provide financial support, and only minimal items of in-kind support, during this time.

Mother completed parenting classes as requested.

On May 12, 2009, more than one year after the children were placed into alternative care, the juvenile office filed petitions to terminate Mother's parental rights. The petitions alleged the best interests of the Children would be served by terminating her parental rights because: (1) the Children had been abused and/or neglected and a previous judicial determination of abuse and/or neglect was made by the juvenile division; (2) the Children had been subject to the jurisdiction of the juvenile division for more than one year, the conditions leading to the removal of the Children continued to exist or conditions of a potentially harmful nature existed such that the Children could not be returned to a parental home in an ascertainable period of time, and the continuation of the parent/child relationship greatly diminished the prospects of the Children for early integration into a stable and permanent home;[3] (3) there was sufficient reason to believe the acts or conditions which justified termination of parental rights had an impact on the Children, constituted abuse and/or neglect, and there was substantial

likelihood of future harm to the Children if parental rights were not terminated; and (4) it would be in the best interests of the Children for parental rights to be terminated.

In October 2009, when Ms. Donson transferred case management, the case goal had changed to termination of parental rights. Ms. Donson reported Mother had not rectified the conditions leading to the Children's placement in care. Ms. Donson believed Mother could not provide a safe and stable home because she never had her own place, was back and forth in an abusive relationship, and she could barely take care of herself let alone five children. She believed the Children would be in danger if returned to Mother's care.

In October 2009, Patty Draper assumed case management. Ms. Draper also reported Mother had consistently been uncooperative with the agency and had inconsistently maintained contact with her. Ms. Draper had only two contacts with Mother, both of which Ms. Draper initiated. Mother also had not provided verification of compliance with services, stable employment, or stable housing. In December 2009, Mother informed Ms. Draper that she was living with Father in Rockaway Beach and not working. Ms. Draper also recommended the termination of Mother's parental rights.

On January 31, 2010, V.J.B. wrote a detailed letter describing Father's sexual abuse. She stated it began when she was eleven years old. Her letter described her care of her siblings, whether her parents were home or not; cockroaches throughout the house; how she and her siblings slept with cockroaches in their beds; and when Mother and Father fought, they would always leave bruises on each other.

---

3. This ground for termination is commonly referred to as the "failure to rectify" ground.

On February 3, 2010, at the outset of the termination of parental rights hearing, Mother's counsel, Mr. Kristoffer Barefield ("Mr. Barefield"), reported he had just spoken with his client who expressed to him she was unable to secure transportation to the hearing and it was her desire to consent to termination of her parental rights. Mr. Barefield suggested they consider hearing the evidence, but leave the record open so he could submit Mother's consents to termination. The juvenile division and the parties agreed to proceed with the hearing and leave the record open in order to provide Mother with an opportunity to present evidence or to receive Mother's termination consents.

The juvenile office offered 19 exhibits, admitted without objection, and three witnesses—Mr. Henson, Ms. Donson, and Ms. Draper—who testified to the above facts, also without objection. Additionally, the juvenile division took judicial notice of the files in the abuse and neglect cases, including Mother's psychological evaluations.

On February 18, 2010, when the juvenile division reconvened, Mother had not submitted any consent to termination of her parental rights. Mr. Barefield announced he had spoken with Mother immediately before the hearing reconvened and she was not going to appear for the hearing. No additional evidence was submitted except on behalf of the Children's Guardian ad Litem, which was a recommendation that termination of Mother's rights was proper and in the best interests of all five children.

On May 12, 2009, the juvenile division entered its "Findings of Fact, Conclusions of Law, and Judgment and Order Terminating Parental Rights" in each case.

Mother filed her notice of appeal in each case on May 26, 2010.

Mother contends the juvenile division erred in finding: (1) Mother abused and/or neglected the Children; (2) the Children had been under the jurisdiction of the juvenile division for a period of one year and that harmful conditions persisted; and (3) termination was in the Children's best interests. Additionally, Mother contends she was not provided effective assistance of counsel at the hearings. The juvenile office contends the evidence established grounds for termination, it was in the Children's best interests, and Mother received effective assistance of counsel.

The issues presented for determination are:

1. Did the record demonstrate one or more grounds for termination of parental rights as set forth in section 211.447.5? [4]

2. Did the totality of circumstances show it was in the Children's best interests to terminate Mother's parental rights?

3. Did Mother receive ineffective assistance of counsel in violation of her due process rights?

### Standard of Review

A two-step analysis must be employed to decide whether to terminate parental rights. *In the Interest of L.M. and S.C.M.*, 212 S.W.3d 177, 180 (Mo.App. S.D. 2007). First, this Court must determine whether a statutory ground for termination, pursuant to section 211.447, has been proven by "clear, cogent, and convincing evidence." *In the Interest of S.J.H. and C.A.H.*, 124 S.W.3d 63, 66 (Mo. App. W.D.2004); § 211.447.6. This burden is met when the evidence "instantly tilts the balance in favor of termination when

4. All references to statutes are to RSMo Cum. Supp. (2007), unless otherwise indicated.

weighed against the evidence presented by the parent whose rights are at issue." *Id.* "We will reverse a [juvenile division's] determination under this step only if it is unsupported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law." *In re L.M.,* 212 S.W.3d at 180–81. "Where the [juvenile division] finds multiple grounds for termination, any one of those grounds is sufficient to sustain the judgment." *In re N.R.W.,* 112 S.W.3d 465, 469 (Mo.App. W.D.2003).

■■ If the first step is satisfied, the juvenile division then determines whether the termination of parental rights is in the best interest of the child. *In re L.M.,* 212 S.W.3d at 181; § 211.447.5. "On that question, the standard of proof at trial is a preponderance of the evidence, and the standard of review on appeal is abuse of discretion." *In the Interest of P.L.O. and S.K.O.,* 131 S.W.3d 782, 789 (Mo. banc 2004). The juvenile division's discretion is abused " 'when it is so clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *In the Interest of D.M.B.,* 178 S.W.3d 683, 690 (Mo.App. S.D.2005) (quoting *In re E.D.M.,* 126 S.W.3d 488, 497 (Mo.App. W.D.2004)).

■ "In all of these determinations, the reviewing court is deferential to the fact-findings of the [juvenile division] and considers all the evidence and reasonable inferences from the evidence in the light most favorable to the judgment." *In re P.L.O.,* 131 S.W.3d at 789. "The termination of parental rights is an awesome power that involves fundamental liberty interests associated with family and child rearing[ ]"; therefore, "we review the record very closely to ensure this awesome power was properly exercised." *In re*

*L.M.,* 212 S.W.3d at 181 (internal citation omitted).

### *Grounds for Termination of Parental Rights*

In Mother's first point relied on, she contends the juvenile division erred in terminating her parental rights because there was no substantial evidence and it was against the weight of the evidence to find Mother abused and neglected the Children pursuant to section 211.447.5(2). In her second point relied on, Mother asserts the juvenile division erred in finding Mother failed to rectify the conditions which led to the assumption of jurisdiction under section 211.447.5(3) because such a finding was against the weight of the evidence and was not supported by substantial evidence. The juvenile office contends clear, cogent and convincing evidence established both grounds to terminate Mother's parental rights. The issue for determination is whether the record demonstrates one or more grounds for termination of parental rights as set forth in section 211.447.5.

■ Section 211.447.5 provides six grounds for termination of parental rights. Multiple grounds may be found under this section; however, in conducting the first step of the analysis to determine whether to terminate parental rights, the appellate court need only find one of the statutory bases was sufficiently proven. § 211.447.5; *See In re N.R.W.,* 112 S.W.3d at 469. Accordingly, we need only to determine if the juvenile division's judgment makes appropriate findings, supported by the record, to justify one of the grounds for termination of parental rights in section 211.447.5. Because there is sufficient support for a finding that Mother failed to rectify the harmful nature of the conditions for the Children, we can address and resolve Points I and II together.

*Section 211.447.5(3): Failure to Rectify*

■ To find the existence of the failure to rectify ground for termination under section 211.447.5(3), the juvenile division must find the following three elements: (1) the "child has been under the jurisdiction of the juvenile court for a period of one year[ ] ..."; (2) the "conditions which led to assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist[ ] ..."; and, (3) "there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home." § 211.447.5(3); *see also In the Interest of B.J.K. and J.R.K.,* 197 S.W.3d 237, 243 (Mo.App. W.D.2006). In this determination, the juvenile division is required to consider and make findings on the following factors:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

Section 211.447.5(3)(a)–(d).

■ Here, the juvenile division found all three required elements and specifically noted these conditions: Mother's continuing habitation with Father—who subjected Mother to physical abuse and her children to sexual abuse—and Mother had not demonstrated the ability to maintain stable, appropriate housing where she could safely meet the basic needs of the Children.

In making this determination, the juvenile division considered and made findings as to each of the four required factors under section 211.447.5(3).

As to factor (a) the juvenile division found:

[M]other was not consistently cooperative with the Children's Division. She did not always maintain regular contact with the agency regarding her living circumstances, employment status, etc.

[M]other did not maintain a stable living environment for the minor [Children]. She moved back and forth between her family and [Father]. At the time of trial she continued to reside with [Father].

[M]other complied with requests to sign release of information forms.

When allowed, [M]other generally maintained contact with the minor [Children].

[M]other did not provide financial support. [M]other provided minimal items of in-kind support. No evidence was presented of an inability on the part of the [M]other to provide at least minimal support for the [Children].

[M]other completed a psychological evaluation.

[M]other had no known law violations subsequent to the placement of the [Children] in care.

[M]other did not consistently attend therapy/counseling and was never successfully released from a program of counseling.

[M]other continued to reside with [Father], an individual deemed by the agency to be inappropriate to be around the [Children].

[M]other has not provided verification of stable employment. There was no evidence that the [M]other was not able to work.

[M]other completed parenting classes.

As to factor (b), the juvenile division explained:

ii. . . . Intensive services have been offered to the [M]other to aid her in adjusting her circumstances to be able to parent the [Children]. Despite those services the [M]other failed to demonstrate an assimilation of those services as evidenced by her continuing relationship with [Father] who sexually abused her [C]hildren; physically abused her; and who abused alcohol.

As to factors (c) and (d), the juvenile division correctly noted there was no evidence Mother suffered from such a mental condition or an untreatable chemical dependency.

After careful review of the record, we find each of the juvenile division's findings on factors (a)–(d) are supported by the documentary and testimonial evidence presented at the hearing.

Mother argues the "original reason for taking the Children into the jurisdiction to the [juvenile division] can be reduced down to the sexual allegations against [Father]" and there was no evidence she knew or should have known about the sexual abuse by Father at that time. This contention is misguided. At the time the Children were placed into the juvenile division's custody, Mother's issues included more than the sexual allegations against Father; Mr. Henson testified that domestic violence and her *continuing* relationship with Father were the issues Children's Division wanted to address. Both of these issues continue to pose a threat to the Children's safety as Mother is residing with Father and has failed to successfully address her domestic violence and stability issues through counseling. The juvenile division's assessment on this termination ground did not consider or make any findings as to whether Mother knew or should have known sexual abuse was occurring before the Children were in protective custody.

Mother also refers to parts of the treatment plan with which she complied in part including maintaining contact with the Children and providing limited in-kind support. However, mere participation in a treatment plan is not sufficient to bar termination. *In the Interest of S— A—J. and S—L—J.*, 818 S.W.2d 690, 702 (Mo.App. S.D.1991). A parent must make a commitment to change the course of conduct which necessitated removal of the children. *Id.* Here, the juvenile division noted both Mother's continued contact and her limited in-kind contributions, but correctly considered them in the context of her general non-compliance. Mother's actions do not show her commitment or that any progress has been made. For example, she has not consistently maintained contact with Children's Division as she continually changed residences without notifying Children's Division, and Mother's last known residence was with Father, who has a known history of sexually abusing her children. This is in direct conflict with her treatment plan.

Mother also points to her limited in-kind donations as evidence that should have negated the juvenile division's concerns over financial support. Again, the juvenile

division took note of this support, but correctly considered the fact that Mother has not consistently provided financial support to the Children, nor has she maintained employment as required by the treatment plan.

Mother next contends the evidence showed there was no indication that Mother's acts or conditions provided a likelihood of future harm to the Children because Mother was successfully reunited with her Children after the first time they were taken into protective custody; Mother did not know of the sexual abuse between the Children and Father; Mother and Father did not have any recent physical altercations; and Mother had housing. The evidence Mother claims supports her contention simply does not exist.

A previous reunification with the Children is of no consequence here as there is overwhelming evidence that Mother continues to struggle with the same issues that led to her Children being taken into protective custody, as well as new issues. *See In the Interest of K.D.H. and P.H.*, 871 S.W.2d 651, 657 (Mo.App. W.D.1994)[5] (finding a parent's success with an initial service plan does not outweigh her inability to follow through with the later service plan).

Mother also continues to rely on her lack of knowledge regarding the sexual abuse between Father and three of her children prior to the Children entering into juvenile division's custody. However, the allegations have since been substantiated and she can no longer feign ignorance as to the threat Father would pose to the Children if they were living in the same household. Unfortunately, Mother's alleged "housing" is with the man Mother now knows repeatedly sexually abused three of her children. This fact alone

strongly indicates these conditions create a likelihood of future harm to the Children. Furthermore, her psychological evaluations indicated serious domestic violence and stability issues. The Children's Division never received any indication Mother had successfully addressed those issues.

As to factor (b), Mother recited the juvenile division's finding that despite intensive services, Mother failed to demonstrate an assimilation of those services as evidenced by her continuing relationship with Father. Her only response was that there is no evidence Mother knew or should have known of the sexual allegations. As discussed above, this fact does not contradict the juvenile division's finding as the allegations of sexual abuse have been substantiated and Mother continues to reside with Father. Substantial evidence supports the juvenile division's finding.

After careful review, we find section 211.447.5(3)—failure to rectify—has been proven by clear, cogent, and convincing evidence. The evidence instantly tilts the balance in favor of termination. Accordingly, we conclude the record demonstrated one or more grounds for termination of parental rights existed as required in section 211.447.5. Points I and II are denied.

### *Best Interest Determination*

Next, Mother contends the juvenile division erred in finding it was in the Children's best interests to terminate her parental rights because Mother kept in contact with the Children, provided in-kind support to the Children, and there was no evidence indicating Mother was aware of the sexual abuse by Father and that she allowed the sexual abuse to continue. The juvenile office contends there was sufficient evidence demonstrating the termination of Mother's parental rights

5. *Overruled on other grounds by In re B.J.K.,* 197 S.W.3d 237, 244 (Mo.App. W.D.2006).

was in the best interests of the Children. Here, the issue is whether the totality of circumstances show it was in the Children's best interests to terminate Mother's parental rights.

 Determining a child's best interest is a subjective assessment based on the totality of the circumstances. *In the Interest of C.A.M.*, 282 S.W.3d 398, 409 (Mo.App. S.D.2009). Section 211.447.7 provides the juvenile division with seven factors to consider when determining whether termination of the parent-child relationship is in the best interest of a child.[6] "There is no requirement, statutory or otherwise, that all seven of these factors must be negated before termination can take place; likewise, there is no minimum number of negative factors necessary for termination." *In the Interest of C.A.M.*, 282 S.W.3d at 409.

 After careful review, we conclude the juvenile division's "best inter-

ests" finding is supported by the record and limit our discussion to the three findings with which Appellant takes issue.[7] First, Mother points to the fact that she generally maintained contact with the Children and provided limited in-kind support to the Children as evidence of the juvenile division's error. The testimony of the caseworkers indicates she generally participated in visitations when available. Ms. Donson also noted Mother did not always take advantage of visitations, even when available, but generally maintained contact through phone calls. Importantly, the juvenile division properly noted Mother's positive efforts in this respect; thus, we are able to conclude it carefully considered this evidence in its determination of the Children's best interests.[8]

 Mother also cites to the fact that she provided in-kind support to the Children as evidence the juvenile division erred. Again, the juvenile division correctly noted this fact indicating its careful

---

**6.** Those factors are:

(1) The emotional ties to the birth parent;
(2) The extent to which the parent has maintained regular visitation or other contact with the child;
(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division ...;
(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
(5) The parent's disinterest in or lack of commitment to the child;
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
(7) Deliberate acts of the parent or acts of another of which the parent knew or should

have known that subjects the child to a substantial risk of physical or mental harm. § 211.447.7(1)–(7).

**7.** Section 211.447.7 requires a specific finding on any "appropriate and applicable" factor listed in the statute. "Consequently, if a factor is appropriate and applicable, in that there was evidence presented that arguably favored the parent, reversal is required if the [juvenile division] failed to make a finding on that factor." *In re J.V.O.*, 133 S.W.3d 570, 574 (Mo.App. S.D.2004). Here, we note the juvenile division failed to make a finding as to factor (4). However, Mother has not alleged error in this omission and there was no evidence presented on this ground that arguably favors Mother. In fact, a review of the record reveals this factor weighs in favor of termination as Mother has received intensive services, but has made little to no progress and failed to comply with significant aspects of her treatment plan.

**8.** The juvenile division found: "The [M]other, when so allowed generally maintained visitation and other contact with the child."

consideration of this evidence. Section 211.447.8 makes clear it is in the discretion of the juvenile division to attach little or no weight to such token gestures of support. *See also In the Interest of L.N.D.*, 219 S.W.3d 820, 828 (Mo.App. S.D.2007). Mother, however, does not allege error with the juvenile division's finding that she did not provide financial support to the Children.[9]

Mother also contends there was no evidence presented she was aware of any sexual abuse by Father. In considering factor (7), the juvenile division found: "Evidence was presented that the minor [Children or Children's siblings] were subjected to sexual abuse by [their] stepfather and the [M]other, knowing of this abuse, failed and refused to protect the [Children]." After a careful review of the record, we find there was no evidence supporting Mother knew of the sexual abuse prior to the Children being taken into custody. The record reveals the allegations of sexual abuse only arose after Mother and Father signed over temporary guardianship of the Children. Although V.J.B.'s letter stated Father began abusing her when she was eleven years old, which demonstrates she endured sexual abuse for two to three years while residing with Mother, the letter also noted she had been too scared to tell anyone and the abuse only occurred when Mother was away. Therefore, we find the juvenile division's conclusion that Mother knew of the sexual abuse and failed to protect the Children, prior to the allegations being substantiated, was unsupported by the evidence.

Nevertheless, we find this factor weighs heavily against Mother. Factor (7) requires consideration of "[d]eliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm." § 211.447.7(7). Our supreme court has held that "[t]he usage of 'subjects' rather than 'subjected' underscores the importance of considering the future." *In the Interest of K.A.W.*, 133 S.W.3d 1, 19 (Mo. banc 2004). The court must describe how past acts indicate a future risk of harm to the children. *Id.* Currently, Mother is living with the man who subjected three of the Children to sexual abuse. Although there was no evidence to indicate she knew about the abuse, and continued to subject those children to that abuse before the Children were in State custody, the sexual abuse allegations have since been substantiated yet she continues to reside with Father despite knowing this and agreeing in her treatment plan not to reside with him. Mother has presented no alternative living arrangements to indicate the Children would not be subjected to continued contact with Father. Thus, we find factor (7) weighs in favor of termination.

■ Even though the juvenile division's findings as to factor (7) were misplaced, we will affirm the juvenile division's judgment "if cognizable under any theory, regardless of whether the reasons advanced by the [juvenile division] are wrong or not sufficient." *Business Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). Overwhelming evidence has demonstrated it was in the Children's best interests to terminate Mother's parental rights: (1) Mother has not provided consistent financial support to the Children or evidence of a means to provide for the basic needs of the Children, (2) she failed to fully participate in programs designed to assist her in dealing

---

9. A parent's duty to provide support does not abate while the child is in the state's custody, and a parent is obligated to provide support even in the absence of demand by Children's Division for such payment. *In the Interest of A.H.*, 9 S.W.3d 56, 60 (Mo.App. W.D.2000).

with issues that led to the Children's placement in care, (3) she chooses to remain with the man who sexually abused three of her children and would pose a threat to all the Children, (4) Dr. Bradford's prognosis for Mother to care for her Children was very guarded to poor, and (5) she has provided no evidence she can provide a stable environment for the Children. We must view the evidence in the light most favorable to the juvenile division's judgment, and we must " 'give deference to the court's ability and opportunity to judge the credibility of the witnesses[.]' " *In re C.A.M.*, 282 S.W.3d at 409 (quoting *In re J.L.B.*, 9 S.W.3d 30, 36 (Mo.App. W.D. 1999)). In that light, we find a preponderance of the evidence supported the juvenile division's finding that termination of Mother's rights is in the best interests of the Children. Therefore, we conclude the totality of circumstances show it was in the Children's best interests to terminate Mother's parental rights. Mother's Point III is denied.

### Ineffective Assistance of Counsel

Mother's fourth point relied on contends she was not provided effective assistance of counsel in violation of her due process rights "under the 14th Amendment to the U.S. Constitution and Article 1 of the Missouri Constitution." The juvenile office contends the juvenile division did not err because Mother's counsel "did exactly what [Mother] requested he do." The issue for determination is whether Mother received ineffective assistance of counsel.

Section 211.462.2, RSMo 1986 provides natural parents the right to counsel in a termination of parental rights proceeding. The failure to appoint counsel to represent the natural parents, or to obtain an affirmative waiver of that right, has been held to be reversible error. *In Interest of J.C., Jr. and T.C.*, 781 S.W.2d 226, 228 (Mo.App. W.D.1989). "This statute implies a right to *effective* assistance of counsel; otherwise the statutory right to counsel would become an 'empty formality.' " *Id.* "In Missouri, the test is whether the attorney was effective in providing his client with a meaningful hearing based on the record." *In Interest of J.M.B.*, 939 S.W.2d 53, 56 (Mo.App. E.D.1997).

A few Missouri cases have found due process guarantees were not protected due to counsel's ineffectiveness in termination of parental rights cases.[10] These cases are distinguishable from the case at hand. While true Mother's counsel, Mr. Barefield, did not cross-examine any witnesses at trial, object to any exhibits, or make a closing argument, he did advocate during the hearing to preserve an opportunity for Mother to voluntarily terminate her parental rights as she expressed this desire to him shortly before the hearing.

Mr. Barefield spoke with Mother on the phone just before the first hearing. During this conversation, she clearly ex-

---

10. *In Interest of J.C., Jr.*, 781 S.W.2d at 228, the parents' counsel was found to be ineffective where he stipulated to the wholesale admission of all reports and records despite many viable objections, waived cross-examination, did not call two available witnesses expected to testify on the parties' behalf, offered no evidence on behalf of the natural parents, and made a statement indicating it was a foregone conclusion to everyone at the hearing that the natural parents' rights would be terminated. Additionally, in *Interest of J.M.B.*, 939 S.W.2d at 56, the court found mother received ineffective assistance of counsel when her attorney did not request a continuance or even a short recess to attempt to contact Mother when she did not appear, counsel made no objection during the direct examination of the sole witness, counsel's cross-examination did not exceed a dozen questions, and counsel stated he believed, as mother's GAL, that mother's rights should be terminated.

pressed her desire to voluntarily terminate her parental rights. Mother does not challenge this fact. Her indifference in maintaining her parental rights was evident in her failure to appear for the hearing, and her expressed desire to terminate parental rights. From these actions, it was reasonable for Mr. Barefield to conclude she was in favor of terminating her rights and he was complying with his client's wishes in advocating for an opportunity for his client to voluntarily terminate her rights. At the start of the hearing, Mr. Barefield clearly conveyed to the juvenile division his client's desire to voluntarily terminate her parental rights and effectively advocated for the juvenile division to permit her to do this, even at this late juncture in the case. In the face of the juvenile division proceeding with the scheduled hearing, Mr. Barefield requested the record be left open in order for him to submit Mother's voluntary consents terminating her parental rights at a later date. The record was left open for any evidence Mother might decide to submit when the matter reconvened.

The record is silent as to any interaction Mr. Barefield had with Mother between the first hearing date and the second. However, there is nothing to indicate an absence of contact between Mr. Barefield and Mother, or that Mother did not have knowledge of her second opportunity to be heard.

Approximately two weeks later, when the juvenile division reconvened, Mother again failed to appear for the hearing set specifically to provide her an opportunity to either voluntarily terminate her rights or present evidence. Mother's failure to show for either hearing further demon-strated her apathy and irresponsibility toward the Children. Mr. Barefield conveyed to the juvenile division that he spoke with Mother that day and she would not be present for the hearing. Significantly, Mr. Barefield spoke with Mother prior to each hearing and was able to affirmatively explain her absence to the juvenile division. Even though Mother did not appear for the first hearing, Mr. Barefield successfully procured an opportunity for her voluntary termination as she requested. Had Mother changed her mind about voluntary termination, she was also able to present evidence at the second hearing. Mother should not now be heard to complain about her counsel when she failed to appear for two hearings and communicated her desire to terminate her parental rights.

Rule 4–1.2(a) provides in part: "A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to Rule 4–1.2(c), (f) and (g), and shall consult with the client as to the means by which they are to be pursued...." [11] Mother's absence from the proceedings did not negate Mr. Barefield's duty to his client; however, it did place Mr. Barefield and the juvenile division in a difficult position. We recognize the test to determine if a parent received effective assistance of counsel directs us to determine whether she received a *meaningful hearing* based on the record; however, we must also consider the facts contained in the record that show his representation during the hearings was limited as a direct result of Mother's actions and expressed desire to voluntarily terminate. Finally, Mother does not now demonstrate how any objections or examination of witnesses would have led to a different outcome. [12]

---

**11.** All rule references are to Missouri Court Rules (2010).

**12.** We have examined Mother's specific allegations as to objections that might have been made and observe that even had those been asserted, they most likely were without merit

In this case, we find Mr. Barefield's affirmative actions in preserving Mother's right to voluntarily terminate her parental rights, or put on evidence at a subsequent hearing, effectively represented the objectives of representation that Mother conveyed to him when she expressed her desire to terminate and failed to appear for the hearings. We determine Mother was accorded a meaningful termination of parental rights hearing based on the record. Therefore, Mother did not receive ineffective assistance of counsel in violation of her due process rights. Point IV is denied.

Accordingly, the judgments of the juvenile division are affirmed.

RAHMEYER, P.J., and BATES, J., concur.

and it is probable the juvenile division's findings would have been the same.