

# Missouri Court of Appeals

## Southern District

### Division One

IN THE INTEREST OF:      )
T.T.O., J.J.O., T.N.O, J.A.O., C.D.O., III,   )
and T.M.O., children under seventeen years )
of age.      )
     )
GREENE COUNTY JUVENILE      )
OFFICE,      )
     )
     Petitioner-Respondent,      )
     )
     vs.      )    Nos. SD36389, 36390, 36391,
     )    36392, 36393, 36394
     )
C.D.O., Jr.,      )    **Filed:**    April 21, 2020
     )
     Respondent-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Robert M. Liston, Senior Judge

**<u>AFFIRMED</u>**

The trial court terminated the parental rights of C.D.O., Jr. ("Father"), to his six minor

children, T.M.O., C.D.O., III, J.A.O., T.N.O., T.T.O., and J.J.O. (collectively, the "Children").[1]

Father appeals in one point claiming that the terminations were not in the best interest of the

---

[1] This appeal is a consolidation of cases SD36389, SD36390, SD36391, SD36392, SD36393 and SD36394.

Children.  Because we presume that the trial court's judgments are valid and it is the appellant's burden to demonstrate the incorrectness of the judgments,[2] we must affirm the judgments.

We review the trial court's findings that termination of Father's parental rights is in the best interest of the Children for an abuse of discretion.  ***In Interest of Z.L.G.***, 531 S.W.3d 653, 660 (Mo.App. S.D. 2017) (en banc).  We may find an abuse of discretion only when the ruling is so arbitrary, unreasonable, illogical, and ill-considered that it shocks the sense of justice and indicates a lack of careful consideration.  ***Id.***  Taking the facts and inferences in the light most favorable to the findings, the following evidence supports the judgments.  ***Interest of R.R.S.***, 573 S.W.3d 717, 725 (Mo.App. S.D. 2019).

At the time that the Children were taken into custody, Father was working out of state.  Though the Children were living with their mother at their maternal grandmother's home, a visit to the family home[3] indicated an inappropriate home with partial flooring and no utilities.  While in foster care, the Children described a neglectful and abusive environment at home.  The Children were treated for post-traumatic stress due to the poor parenting they had received.

Father entered and partially completed a treatment plan where he took parenting classes, sought drug treatment programs, visited semi-regularly (8 of 16 visits), and provided minimal food and clothing for a visit.[4]  Although the efforts are commendable, the contrary facts are that Father, at the time of termination, still did not have adequate housing or income to support any of

---

[2] ***Interest of R.R.S.***, 573 S.W.3d 717, 730 (Mo.App. S.D. 2019).

[3] When Father returned from working out of state, he and the Children's mother "planned on fixing up the house so that they could move back there."

[4] We do not take lightly the significant efforts Father made to reunite with the Children, however, we must defer to the trial court's determinations regarding the credibility of the witnesses.  ***In re K.A.W.***, 133 S.W.3d 1, 11-12 (Mo. banc 2004).  We cite evidence that appears favorable to Father and acknowledge that the trial court was free to draw a conclusion that supports a finding that it was in the best interest of the Children that Father's parental rights be terminated.

the Children. Further, though Father had been incarcerated several times during the time the Children were in foster care, he declined having visitation with the Children while incarcerated because he thought it would be harmful to the Children. As commendable as his motives may have been, the Children were deprived of a relationship with their Father for a significant period of time. At the time of the termination hearing, the relationship was described as "nonexistent" for some of the Children. Significant counseling would be necessary before a relationship might possibly resume.

Alyssa Ingle, a licensed professional counselor, testified for the Children's Division. According to Ingle, she provided counseling services to C.D.O. and J.A.O. for post-traumatic stress for about sixteen months before the trial. Father and the Children's mother caused post-traumatic stress by locking the Children in a room, nailing the door shut, and leaving the children alone for several hours. While the children were locked in the room, C.D.O. and J.A.O. had to take care of their younger siblings. C.D.O. and J.A.O. also told Ingle they witnessed fights between Father and their mother. Ingle testified regarding the relationship between the Children and Father. According to Ingle, C.D.O. has no relationship with Father and does not want contact with him. Ingle further testified that if C.D.O. had more contact with Father, C.D.O.'s anger would increase and C.D.O. would be re-traumatized.

Ingle also testified that J.A.O. has the same trauma as C.D.O. and does not have a relationship with Father. J.A.O. wishes to remain in his current foster home and has not expressed a desire to return to Father. Ingle testified that if J.A.O. had more contact with Father, J.A.O would be reintroduced to trauma and could develop trust issues. J.A.O. is adamant that he wants to live with his foster parents and does not want to go anywhere else. Ingle testified that it was not in the best interest of the Children for them to return to Father.

3

Emily Townsend, case manager for the children from May 2018 until trial, also testified. She recommended that the trial court terminate Father's rights because it was in the Children's best interest. Townsend testified that the Children want to remain in their current foster homes and that the Children's excitement to see Father waned over time. Townsend believed the Children's lack of bonding with Father was due to Father's failure to comply with the terms of his treatment plan and his criminal activity.

Townsend testified Father failed to complete the Family Treatment Court because he was incarcerated. Father was incarcerated from June 2018 to September 2018. In October 2018, Father was released, but in November he was arrested and returned to jail. Father admitted he was using methamphetamine and marijuana in November 2018.[5]

At the time of trial, Father was living with the mother's brother, who had a criminal history. The home is too small for six children. The home is not child proof or kid-friendly. Father never presented an acceptable home plan. Father has not had a job or a stable source of income since the children came into care. Father has not worked since April 2018. Father brought food and clothing to one visit but did not provide any other in-kind support.

Although Father addressed many of his legal issues, at the time of trial he still had a pending DWI. He had not completed drug court or family treatment court because of his legal issues. Father had been fitted with a SCRAM bracelet to test for drug and alcohol use and had not tested positive during that time period; however, it was a very short period of time. The trial

---

[5] In December 2018, Father went to prison to complete a 120-day treatment program. Father was released from prison in April 2019. A month later, Father was sent back to jail for providing a wrong address to his probation officer. Father was released from jail in June 2019. Father admitted to being in and out of jail for law violations. Father had a residency violation and two misdemeanor violations, including one for assaulting a police officer. Father did not have a valid driver's license at the time of trial.

court was free to find that Father's drug and alcohol issues may not have ended in the near future.

The State has the burden of proving, by a preponderance of the evidence, whether the termination of parental rights is in the best interest of the child. *In re A.S.W.*, 137 S.W.3d 448, 452 (Mo. banc 2004). The best interest of the child analysis is a "subjective assessment based on the totality of the circumstances." *In re C.A.M.*, 282 S.W.3d 398, 409 (Mo.App. S.D. 2009). "'There is no requirement, statutory or otherwise, that all seven [factors to consider when determining whether termination of the parent-child relationship is in the best interest of a child] must be negated before termination can take place; likewise, there is no minimum number of negative factors necessary for termination.'" *C.V.E. v. Greene County Juvenile Office*, 330 S.W.3d 560, 572 (Mo.App. S.D. 2010) (quoting *In re C.A.M.*, 282 S.W.3d at 409)).

The trial court found that the "evidence presented established that . . . C.D.O. and J.A.O. have expressed that they do[] not want contact with the parents and have a fear of the parents . . . J.A.O. has expressed a fear of being left alone by the mother and father." Ingle testified that C.D.O. has no relationship with Father and does not want contact with him. The trial court found: (1) that Father's visits with the Children were "sporadic"; (2) that Father failed to provide financial support for the Children (Father does not challenge the trial court's finding on this factor); and (3) that there were no additional services that could be offered which would allow for reunification.

The trial court's findings that termination of Father's parental rights was in the best interest of the Children were not clearly against the logic of the circumstances. Father fails to demonstrate how the trial court abused its discretion in finding that termination of his parental

5

rights was in the best interest of the Children. Father's argument ignores our standard of review by emphasizing the evidence favorable to his position (e.g., that the emotional ties could possibly be repaired through counseling; that he displayed interest in the Children by writing letters and bringing food and toys to them on one occasion; that he agreed to start counseling) and by engaging in a re-weighing of the evidence. He also overlooks the law that states there is no minimum number of negative factors necessary for termination. *See **C.V.E. v. Greene County Juvenile Office***, 330 S.W.3d 560, 572 (Mo.App. S.D. 2010).

The trial court did not abuse its discretion in finding that it was in the best interest of the Children that Father's parental rights be terminated.

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J. – Concurs

William W. Francis, Jr., J. – Concurs